[Cite as *Kinnison v. Ohio State Univ.*, 2013-Ohio-5715.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Tiffany Kinnison et al., | : | |
| Plaintiffs-Appellants, | : | |
| v. | : | No. 13AP-501 (Ct. of Cl. No. 2011-08644) |
| The Ohio State University et al., | : | |
| Defendants-Appellees. | : | (REGULAR CALENDAR) |

D E C I S I O N

Rendered on December 24, 2013

*Plevin & Gallucci*, and *David R. Grant; Paul W. Flowers Co., L.P.A.,* and *Paul W. Flowers*, for appellants.

*Mike DeWine*, Attorney General, *Peter E. DeMarco* and *Daniel R. Forsythe*, for appellee.

APPEAL from the Court of Claims of Ohio

TYACK, J.

{¶ 1} The Kinnison family is appealing from the summary judgment granted to The Ohio State University and the Champion Drive 4-H Club in the Kinnison family's wrongful death suit resulting from the drowning of Jonathan Kinnison at a pool party.

{¶ 2} The family assigns a single error for our consideration:

ASSIGNMENT OF ERROR: THE COURT OF CLAIMS JUDGE ERRED, AS A MATTER OF LAW, BY GRANTING SUMMARY JUDGMENT UPON PLAINTIFF-APPELLANTS' WRONGFUL DEATH AND SURVIVORSHIP CLAIMS.

{¶ 3} Jonathan Kinnison was only ten years old when he drowned while attending a pool party sponsored by the Champion Drive 4-H Club ("4-H Club"). Because the 4-H Club was under the supervision of The Ohio State University ("OSU"), this lawsuit, filed on behalf of Jonathan's family and his estate, was litigated in the Court of Claims of Ohio. R.C. 2743.02.

{¶ 4} The 4-H Club and OSU denied liability for Jonathan's drowning.

{¶ 5} A parallel lawsuit in the Darke County Court of Common Pleas was also pursued and apparently resolved, which resulted in the Court of Claims lawsuit proceeding.

{¶ 6} OSU and the 4-H Club ultimately filed a motion for summary judgment, alleging that they were protected from liability because Jonathan was involved in a recreational activity when he drowned. A judge of the Court of Claims agreed and granted summary judgment, finding no evidence of recklessness or intent as to certain parties.

{¶ 7} More than mere negligence, recklessness or intent is required in a case to which the recreational activity defense applies. In *Marchetti v. Kalish*, 53 Ohio St.3d 95 (1990), and *Thompson v. McNeill*, 53 Ohio St.3d 102 (1990), the Supreme Court of Ohio concluded that individuals engaging in recreational or sports activities assume the ordinary risks of the activity and cannot recover for injury unless the other participant's actions were either intentional or reckless. Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. 2 Restatement of the Law 2d, Torts, Section 500 (1965). *See also Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, syllabus, *reconsideration denied*, 133 Ohio St.3d 1511, 2012-Ohio-6209 (distinguishing "willful," "wanton," and "reckless" as different and distinct degrees of care).

{¶ 8} Counsel for the family had argued several points in response to the motion for summary judgment. First, counsel argued that the owner of the swimming pool has an obligation to provide adult supervision, preferably a lifeguard, when children are known to be swimming in their swimming pool. Presumably, this issue was resolved in the Darke County Court of Common Pleas case, because the owners of the pool were not state entities and did not become state entities merely by allowing their pool to be used by state entities. This theory of liability does not apply to the facts of the Kinnison family's case in the Court of Claims.

{¶ 9} Counsel for the family also argued for liability as to the 4-H Club because the 4-H Club assumed responsibility for supervising children at the 4-H Club's activities. This theory has been laid to rest by *Gentry v. Craycraft*, 101 Ohio St.3d 141, 143, 2004-

Ohio-379; *Marchetti*. If children are injured in recreational pursuits that involve inherent risks, intentional or reckless conduct is necessary if liability is to be established. An obvious example is the situation where a 4-H Club takes children to a baseball game and a child is struck by a foul ball. The 4-H Club's good intentions do not make it liable under such situations. The risks are known to all, and good intentions to protect children do not lead to liability if an obvious risk results in injury. "[A] swimming pool presents an open and obvious condition that should be appreciated by both minors and adults." *Mullens v. Binsky*, 130 Ohio App.3d 64, 71 (10th Dist.1998), citing *Torf v. Commonwealth Edison*, 268 Ill.App.3d 87 (1994) ("generally the danger of drowning in a body of water is considered an open and obvious risk which both minors and adults should be expected to be able to appreciate and avoid"). " 'There are many dangers, such as those of fire and water, or of falling from a height, which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large.' " *Vanderbilt v. Pier* 27, L.L.C., 12th Dist. No. CA2013-02-029, 2013-Ohio-5205, quoting 2 Restatement 2d, Torts, Section 339, Comment j (1965).

{¶ 10} Nevertheless, a child's ability to ascertain the risk inherent in an activity such as swimming is not germane to the analysis. "In a personal injury action brought for injuries sustained while an individual is a participant in or a spectator at a sport or recreational activity, the age of the participant or spectator and whether he or she was capable of appreciating the inherent risks is immaterial. Instead, recovery is dependent upon whether the defendant's conduct was either reckless or intentional." *Gentry* at syllabus.

{¶ 11} Having determined that the recreational activity doctrine shields 4-H Club and OSU from claims of negligence, this leaves proof of recklessness as the remaining theory of liability. The primary theory of recklessness presented was that no one was keeping an eye on the deep end of the pool when Jonathan Kinnison drowned.

{¶ 12} Jonathan had been told to stay in the shallow end of the pool because he could not really swim. At most, he could dog paddle. How he got into the deep end of the pool and was submerged long enough to actually drown is not known. Clearly, someone should have been keeping an eye on the deep end. No one was.

{¶ 13} The trial court noted:

- Kinnison told Jonathan to stay in the shallow end of the pool;
- Sharon Brewer told her children and the Kinnison children to stay in the shallow end of the pool at least three times;
- Sharon Brewer and Bill Funderburg sat near the shallow end of the pool and watched the children swimming there;
- Carol Funderburg stood outside of the pool area at the fence and watched the shallow end of the pool;
- A rope in the pool visibly separated the shallow end of the pool from the deep end; and
- Life jackets and flotation devices owned by the Funderburgs were available for use.

Decision, at 8-9.

{¶ 14} The trial court addressed the issue of recklessness as to Sharon Brewer, who was a friend of the Kinnison family and was the one who took Jonathan Kinnison to the pool party.  The trial court addressed the recklessness of the Funderburgs as the owners of the pool.  The liability of the Funderburgs in the Court of Claims has been discussed earlier.

{¶ 15} The trial court did not expressly address the potential recklessness of the advisors for the 4-H Club, those who organized the party on behalf of the 4-H Club, or the 4-H Club as a separate entity.  This was not the first pool party the 4-H Club held at the Funderburgs' pool, so presumably, the club knew the pool had no lifeguards or systems for watching swimmers.  Swimming pools have long been recognized as an attractive nuisance for young children, especially young children who do not swim.  In *Bennett v. Stanley,* 92 Ohio St.3d 35 (2001), a child and his mother drowned in an abandoned swimming pool, and the Supreme Court of Ohio adopted the attractive-nuisance doctrine for child trespassers and adults who attempt to rescue them.  The risk of non-swimming children getting into deep water and drowning is commonly known.  Such things happen even in swimming pools where trained lifeguards are on duty.  According to the Kinnisons' expert, Dr. Tom Griffiths, 19 percent of children who drown at public pools do so with certified lifeguards on duty.  Dr. Griffiths also reported that "[a]ccording to the Centers for Disease Control (CDC) in Atlanta, drowning is the leading cause of accidental death in young children." (Report of Dr. Griffiths, at 4.)

{¶ 16} The Kinnison family apparently cites the attractive-nuisance doctrine for the proposition that a higher duty of care is required in this case because Jonathan was only ten years old. Nevertheless, the doctrine is inapplicable here, first because the Kinnison children were guests and not trespassers on the property. In addition, the recreational-use doctrine acts as a complete bar to an action for negligence because, as a matter of law, the courts have held that, under these types of circumstances, there is no duty and therefore no claim exists for negligence. Additionally, the child's perception of the risk inherent in a recreational activity is not part of the analysis under the recreational- use doctrine.

{¶ 17} We note that the motion for summary judgment filed on behalf of the 4-H Club and OSU contains a number of factual statements that are open to serious question, especially since facts were to be construed most strongly in favor of the Kinnison family when addressing the 4-H Club's motion for summary judgment. For instance, calling Jonathan a "decent swimmer" when he, at most, could dog paddle is placing a label on him which arguably overstates his swimming ability.

{¶ 18} Clearly, no one was watching the deep end of the pool or someone would have noticed Jonathan going under water in the deep end of the pool and staying under water long enough to drown. His body was found under water in the deep end of the pool. This fact is indisputable.

{¶ 19} The Funderburgs allegedly asked two of their grandchildren to keep an eye on the deep end of the pool, but the teenagers apparently got engrossed in private conversations with friends who were outside the pool and spent a significant amount of time with their back to the pool. Further, the record before us does not indicate that the 4-H Club asked anyone to keep an eye on the deep end of the pool. The Funderburgs, as the pool owners, asked their grandchildren to help. There is no evidence that the 4-H Club itself made any arrangements for pool safety with regard to the deep end of the pool.

{¶ 20} Again, neither the Funderbergs nor Sharon Brewer, the family friend who took Jonathan Kinnison to the party, were agents of the 4-H Club for purposes of safety. This is especially so since Brewer brought nine children to the pool for the party.

{¶ 21} There is no evidence in the record before us that the 4-H Club itself did anything to encourage pool safety for the deep end of the pool, which apparently was

approximately two-thirds of the pool. The record contains an affidavit from Dr. Griffiths that includes a long list of things the 4-H Club should or could have done to foster a safe pool party.

{¶ 22} The Court of Claims should be the court that first addresses whether the potential for a finding of recklessness exists as to the persons who organized an event at a swimming pool with no lifeguards and no staff trained to look out for non-swimmers, especially in the deep end of the swimming pool. Obviously, no one saw Jonathan Kinnison somehow get into deep water, go under the surface of the water and stay there long enough that he could not be revived. A lack of recklessness is not so apparent from the record before us that we feel comfortable making a finding which affirms the trial court's judgment without having the benefit of the trial court's analysis of the potential for a finding of recklessness as to the 4-H Club who organized the event with the lack of certain safeguards commonly present at swimming pools generally.

{¶ 23} The Court of Claims did note that "[p]laintiffs have failed to present any evidence that defendant had a conscious disregard or indifference to a known or obvious risk of swimming." Decision, at 8. This comment overlooks the extensive affidavit of Dr. Griffiths and what some might consider a fact which is intuitively obvious, allowing non-swimmers or swimmers with limited ability to swim unwatched in a pool with a depth of eight and one-half to nine feet involves a risk of drowning for the non-swimmer or limited ability swimmer. Construing the evidence in a light most favorable to the Kinnisons, we determine that reasonable minds could find that there is a material issue of fact whether the 4-H Club's actions rose to the level of recklessness. The record shows that at least one aquatic safety expert believes there was a failure to properly provide for Jonathan Kinnison's supervision and safety. Whether or not such conduct rises to the level of recklessness is normally a question to be determined by the trier of fact. *Thompson v. Bagley*, 3d Dist. No. 11-04-12, 2005-Ohio-1921.

{¶ 24} Again, we note, the trial court judge commented about what other people (the Funderburgs and Carol Brewer) did, but took no note of what the 4-H Club did or did not do to foster safety. Indeed, the record is at best sparse as to that issue.

{¶ 25} The assignment of error is overruled with respect to the negligence claim, but sustained with respect to the issue of recklessness.

{¶ 26} The judgment of the Court of Claims of Ohio is reversed and the case is remanded for further proceedings to address whether the 4-H Club and OSU were reckless.

*Judgment affirmed in part, reversed in part*
*and remanded for further proceedings.*

DORRIAN and T. BRYANT, JJ., concur.

T. BRYANT, retired, formerly of the Third Appellate District, assigned to active duty under the authority of Ohio Constitution, Article IV, Section 6(C).