[Cite as *Price v. Decker*, 2014-Ohio-1125.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


GERALD R. PRICE, ET AL        :     JUDGES:
                                      :
                                      :     Hon. W. Scott Gwin, P.J.
    Plaintiffs-Appellants        :     Hon. Sheila G. Farmer, J.
                                      :     Hon. Patricia A. Delaney, J.
-vs-                            :
                                      :     Case No. 13CAE070058
                                      :
THOMAS DECKER                :
                                      :
                                      :
    Defendant-Appellee        :     O P I N I O N


CHARACTER OF PROCEEDING:        Appeal from the Delaware County Court
                                                of Common Pleas, Case No.
                                                12CVC111322


JUDGMENT:                          AFFIRMED


DATE OF JUDGMENT ENTRY:         March 11, 2013


APPEARANCES:

For Plaintiffs-Appellants:              For Defendant-Appellee:

RICHARD D. BROWN                  DANIEL J. HURLEY
WEAVER LAW OFFICES, LLC          CRABBE, BROWN & JAMES LLP
3 S. High St.                              500 S. Front St., Suite 1200
Canal Winchester, OH 43110        Columbus, OH 43215

*Delaney, J.*

{¶1}   Plaintiffs-Appellants Gerald R. and Louisa F. Price appeal the July 2, 2013 judgment entry of the Delaware County Court of Common Pleas.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   Dinneen Field, located in Westerville, Delaware County, Ohio, is used by model airplane enthusiasts to file radio-controlled airplanes. Dinneen Field has a long grass field that is used as a runway for the model airplanes to take off and land. Adjacent to the grass runway are five square concrete flying pads upon which model airplane operators stand to fly their airplanes. Around each concrete pad is a three-sided protective fence angled around the pad for the operator to stand behind to fly the airplane. Beyond the concrete flying pads is a grassy area that is bordered by a protective fence. The area behind the fence is the "pit area." The pit area has benches for the model airplane operators to sit to work on their planes. Between the pit area and the flights stations are large planter-type boxes for protection between the concrete flying pads and the pit area.

{¶3}   On September 4, 2009, Defendant-Appellee Thomas Decker was flying his 67" Fusion X3 model airplane at Dinneen Field. Plaintiff-Appellant Gerald Price was already at Dinneen Field. Price had previously expressed interest in flying Decker's model airplane. Decker invited Price to the concrete flying pad to fly his model airplane and he handed Price the controls. As Price was flying the model airplane, Price said the plane was hit with radio interference, causing the plane to tumble in the sky. Price regained control of the plane and handed the controls back to Decker.

{¶4} Decker landed the plane and taxied it back to the concrete flying pad. Decker and Price discussed what happened to the model airplane while it was flying. During their discussion, the model airplane engine was idling. Price did not ask Decker to turn off the engine of the model airplane. The conversation concluded and Price turned to walk away. He heard the model airplane engine go full throttle. He turned and saw the model airplane coming towards him. He could not move his left leg out of the way in time and the model airplane propeller struck his left leg, causing severe lacerations.

{¶5} Price and his wife, Plaintiff-Appellant Louisa F. Price filed a personal injury complaint against Decker in the Franklin County Court of Common Pleas. The Franklin County Court of Common Pleas transferred the action to the Delaware County Court of Common Pleas. Price voluntarily dismissed the complaint. Price refiled the complaint, alleging negligence and recklessness by Decker. Decker filed a motion for summary judgment, arguing he was entitled to judgment as a matter of law based on the recreational activity doctrine. The trial court granted Decker's motion for summary judgment on July 2, 2013.

{¶6} It is from this decision Price now appeals.

## ASSIGNMENTS OF ERROR

{¶7} Price raises two Assignments of Error:

{¶8} "I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT AND IN APPLYING THE RECREATIONAL ACTIVITY DOCTRINE, AS THE RISKS FACED BY GERALD PRICE

WERE NOT FORESEEABLE AND CUSTOMARY TO THE ACT OF MODEL AIRPLANE FLYING.

{¶9} "II. EVEN IF THE RECREATIONAL ACTIVITY DOCTRINE APPLIES IN THIS CASE, THE ACTIONS OF DEFENDANT-APPELLEE CONSTITUTE RECKLESS CONDUCT, OR, AT A MINIMUM, CREATE A QUESTION OF FACT FOR THE JURY TO DECIDE, RENDERING SUMMARY JUDGMENT IMPROPER."

**ANALYSIS**

**Summary Judgment Standard of Review**

{¶10} Price's first and second Assignments of Error refer to the trial court's grant of summary judgment in favor of Decker. We refer to Civ.R. 56(C) in reviewing a motion for summary judgment, which provides, in pertinent part:

> Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶11} The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court, which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). The nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings, but must set forth "specific facts" by the means listed in Civ.R. 56(C) showing that a "triable issue of fact" exists. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801 (1988).

{¶12} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. *Vahila v. Hall*, 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (1997), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

## I. Recreational Activity Doctrine

{¶13} In *Marchetti v. Kalish*, 53 Ohio St.3d 95, 559 N.E.2d 699 (1990), and *Thompson v. McNeill*, 53 Ohio St.3d 102, 559 N.E.2d 705 (1990), the Supreme Court of Ohio concluded that individuals engaging in recreational or sports activities assume the ordinary risks of the activity and cannot recover for injury unless the other participant's actions were either intentional or reckless. In addition, the Court held the conduct must be the foreseeable and customary part of the activity. *Marchetti* applies to all sporting and recreational activities regardless of expectation of injury. *Spangler v. Kehres*, 107 Ohio App.3d 1, 3, 667 N.E.2d 991 (5th Dist.1995).

{¶14} In *Zinn v. Cattell*, 11th Dist. Ashtabula No. 93-A-1831, 1994 WL 102377 (Mar. 18, 1994), the Eleventh District Court of Appeals determined flying radio-

controlled model airplanes was a recreational activity. The plaintiff in *Zinn* was injured when he was struck in the hand by the propeller from a radio-controlled model airplane being operated by the defendant. *Id.* at 1. The parties were at the airfield where they would operate their model airplanes. The incident occurred after the defendant had landed his plane and was taxiing it to the pits. As the plaintiff was preparing his plane for flight in the contiguous parking lot, the defendant's plane inexplicably flew at the plaintiff, injuring his hand. *Id.* at 1.

{¶15} The plaintiff argued on appeal that the defendant's loss of control over the model airplane was not a customary, foreseeable risk of the activity of flying model airplanes. The court disagreed:

> As a preliminary matter, we note that if there is any risk associated with flying model airplanes, it would be the risk that an operating plane would come in contact with another, potentially causing injury. We hold that the loss of control over a model airplane is a foreseeable occurrence in the activity of flying model airplanes.

*Id.* at 2.

{¶16} Price concedes in his appellate brief that flying model airplanes is a recreational activity. He further concedes that liability for an injury caused by a model airplane could be barred if the injury occurred while operating the plane under normal conditions. In this case, however, Price argues the risk he faced was not under normal conditions and was therefore outside the foreseeable and customary part of the activity of flying model airplanes. He contends his injury was not a foreseeable and customary

risk in the activity in flying model airplanes because the injury occurred while the model airplane was idling on the ground near the concrete flying pad.

{¶17} Price first contends the incident was outside the customary risk because Decker violated the rules of Dinneen Field. Price argues Decker violated the rules of Dinneen Field because Decker's model airplane engine was idling while parked near the concrete pad. Price states Decker should have shut the model airplane engine off. Wesley McClanahan, a model airplane enthusiast who flies his planes at Dinneen Field, testified it was against the rules of Dinneen Field to taxi an airplane past the concrete pad into the grassy area prior to reaching the pit area. (McClanahan Depo., 19). McClanahan testified that when the pilot lands the plane, the pilot is to taxi back from whichever end of the field the operator is located, and then the pilot shuts the plane off and carries it back. (McClanahan Depo., 19). It would be improper for a pilot to taxi his plane toward the pit area after landing the plane and coming in. (McClanahan Depo., 20). McClanahan also testified, however, that everybody taxied their model airplanes into or toward the pit area at Dinneen Field. "We all taxi back to the pit area." (McClanahan Depo., 8-9). Kevin D. Kretschmer, another model airplane enthusiast who witnessed the incident, testified as to the rules of Dinneen Field:

Q. Had you ever observed [Decker] taxiing his airplane improperly or in an improper area?

A. No. The only thing that he would do is he would taxi his plane – we have flight stations. So he would taxi his plane towards the flights stations and pointed in between in times. But other than that, I don't recall.

Q. And would you consider that to be improper taxiing between the flight stations?

A. No. Well, most people don't, but, again, I – I don't – wouldn't necessarily consider it improper.

Q. Have you observed other people doing that –

A. Yes.

Q. – at the field?

(Kretschmer Depo., 9-10). Kretschmer was not aware of a rule of the field that prohibited a pilot from taxiing a model airplane past the concrete flying pads towards the pit area. (Kretschmer Depo., 22).

{¶18} Price next argues the incident was outside the foreseeable and customary activity of model airplane flying because Decker failed to properly maintain his airplane. Price testified in his deposition it was his opinion as an experienced model airplane pilot that Decker failed to set or properly set the failsafe function on the plane. The failsafe is a system built into the electronics of the model airplane transmitter that if the transmitter and receiver lose communication, the model airplane would go to the previous failsafe set condition. (Price Depo., 19). Price sets the throttle on his model airplane to low throttle so if it loses control, it will drop to low throttle and will not travel a great distance in the air or move on the ground. (Price Depo., 19-20). It was Price's opinion that the failsafe was not set on Decker's model airplane because it did not drop to low throttle when it experienced radio interference while Price was flying the airplane and when the airplane went to full throttle while on the ground. (Price Depo., 51). Price did not inspect Decker's model airplane before or after the incident. (Price Depo., 78).

Kretschmer examined Decker's plane after the incident but he did not check to see if the failsafe function was set. (Kretschmer Depo., 12).

{¶19} The trial court determined there was no genuine issue of material fact the incident was within the foreseeable and customary risk of flying a model airplane. We agree. The case is about the loss of control of a model airplane, as discussed in *Zinn v. Cattell*. Price argues the circumstances of this case, such as Decker's violations of the field rules and Decker's alleged failure to set the failsafe functions, resulted in risks that were outside the foreseeable and customary nature of model airplane flying. Our review of the Civ.R. 56 evidence presented, considered in a light most favorable to Price, does not create a genuine material of fact as to whether the loss of control of the model airplane was within the ordinary risks.

{¶20} McClanahan and Kretschmer testified there might be a Dinneen Field rule that model airplane pilots cannot taxi their planes toward the pit area, but they witnessed pilots taxiing their planes towards the pit area. Further, in this case, the accident did not occur while Decker was in the process of taxiing his plane toward the pit area. Decker's model airplane went full throttle and struck Price in the leg while the plane was parked and engine idling near the concrete flying pad. Price did not present any Civ.R. 56 evidence as to whether there is a Dinneen Field rule that the engine of the model airplane must be turned off when the plane is not flying. Based on the Civ.R. 56 evidence presented as to the rules of Dinneen Field, a parked model airplane near the concrete flying pads with engine idling does not present circumstances outside the customary and foreseeable risk involved with the recreational activity of flying model airplanes.

{¶21} As to the failsafe function on Decker's model airplane, we agree with the trial court that the Civ.R. 56 evidence presented creates no genuine issue of material fact. Price testified it was his opinion that the failsafe was not set on Decker's model airplane. He speculated that the manner in which the model airplane performed in the air and on the ground meant Decker did not properly set the failsafe function. Price did not inspect Decker's model airplane before or after the accident. Kretschmer examined Decker's model airplane after the accident but did not check the failsafe function.

{¶22} *Marchetti* applies to all sporting and recreational activities regardless of expectation of injury. *Spangler v. Kehres*, 107 Ohio App.3d 1, 3, 667 N.E.2d 991 (5th Dist.1995). The risk of flying model airplanes is that an operating plane may come in contact with another, potentially causing injury. *Zinn, supra* at 2. We notice that *Zinn* did not limit the recreational activity to only a "flying" model airplane – it highlighted the inherent risk in an "operating" model airplane. In this case, the parties had just finished flying Decker's model airplane and taxied it near the concrete flying pad. The model airplane was parked and the engine was idling while the parties discussed the model airplane. At that point, the operating model airplane lost control. We find under these factual circumstances, the loss of control of Decker's operating model airplane was within the foreseeable and customary risk of the recreational activity of flying model airplanes.

{¶23} Price's first Assignment of Error is overruled.

**II. Recklessness**

{¶24} Price next argues the trial court erred when it determined that Decker's conduct during the recreational activity of flying model airplanes was not reckless. We disagree.

{¶25} As stated above, the Supreme Court of Ohio concluded that individuals engaging in recreational or sports activities assume the ordinary risks of the activity and cannot recover for injury unless the other participant's actions were either intentional or reckless. *Marchetti v. Kalish*, 53 Ohio St.3d 95, 559 N.E.2d 699 (1990); *Thompson v. McNeill*, 53 Ohio St.3d 102, 559 N.E.2d 705 (1990)

{¶26} Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. 2 Restatement of the Law 2d, Torts, Section 500 (1965). *See also Anderson v. Massillon*, 134 Ohio St.3d 380, 983 N.E.2d 266, 2012–Ohio–5711, syllabus, reconsideration denied, 133 Ohio St.3d 1511, 979 N.E.2d 1289, 2012–Ohio–6209 (distinguishing "willful," "wanton," and "reckless" as different and distinct degrees of care). *Kinnison v. Ohio State Univ.*, 10th Dist. No. 13AP-501, 2013-Ohio-5715, ¶ 7. In considering whether the intentional or reckless misconduct gives rise to liability, it must be understood in the context of the rules of the sport. *Thompson v. McNeill*, 53 Ohio St.3d 102, 104, 559 N.E.2d 705, 707 (1990)*.

{¶27} Price stated in his deposition that he did not believe Decker hurt him intentionally. (Price Depo., 51). Price argues Decker's conduct in the operation of his model airplane rose to the level of recklessness. Price's arguments as to the operation

of the model airplane relate to Decker's alleged failure to set the failsafe function and Decker's failure to turn off the model airplane's engine while it was parked near the concrete flying pad.

{¶28} We discussed Decker's operation of the model airplane in our analysis of whether the circumstances of the injury suffered by Price was within the foreseeable and customary part of the recreational activity. Based on our analysis above, we find Decker's operation of his model airplane did not rise to the level of recklessness. The model airplane was parked and idling by the concrete flying pad when the injury occurred. While the rules of Dinneen Field may prohibit a pilot from taxiing a plane to the pit area, Price did not present any Civ.R. 56 evidence that it was against Dinneen Field rules to idle a model airplane near the concrete flying pad. Price also speculated that Decker had failed to properly set the failsafe function on his model airplane. Price did not inspect the plane. Kretschmer inspected the plane after the accident but did not inspect the failsafe function. Under these facts, reasonable minds could only conclude that Decker's operation of the plane did not exhibit a conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct.

{¶29} Price's second Assignment of Error is overruled.

## CONCLUSION

{¶30} The Assignments of Error of Plaintiffs-Appellants Gerald R. and Louisa F. Price are overruled.

{¶31} The judgment of the Delaware County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Farmer, J., concur.