[Cite as *Lemaster v. Grove City Christian School*, 2017-Ohio-8459.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Hayden Lemaster et al., | : | |
| Plaintiffs-Appellants, | : | No. 16AP-587 |
| | | (C.P.C. No. 15CVC-07-6435) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Grove City Christian School et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on November 7, 2017

**On brief:** *Brian Harter*, for appellants. **Argued:** *Brian Harter*.

**On brief:** *Weston Hurd LLP, W. Charles Curley* and *Kaitlin L. Madigan*, for appellees. **Argued:** *W. Charles Curley*.

APPEAL from the Franklin County Court of Common Pleas

TYACK, P.J.

{¶ 1} Hayden Lemaster ("Hayden"), Heidi and Brian Lemaster, plaintiffs-appellants, appeal from the judgment of the Franklin County Court of Common Pleas in which the court granted the motions for summary judgment filed by Grove City Christian School ("GCCS") and Sean P. Swank ("Swank"), defendants-appellees.

{¶ 2} In April 2009, Hayden was a sixth-grade student at GCCS. Swank was the head football coach for the middle school football team. Heidi and Brian Lemaster are Hayden's parents. On April 9, 2009, Hayden was participating in an out-of-season football conditioning program overseen by Swank. After the main conditioning program was completed, Hayden was performing a squat lift, which involves squatting down while a barbell loaded with weights rests on the shoulders. Hayden weighed approximately 97 pounds. Although the actual weight on the barbell was disputed, the trial court accepted

the amount indicated in the complaint—200 pounds total—for purposes of summary judgment. It was also somewhat disputed whether Swank instructed the athletes to "max out"—an attempt to lift their personal maximum weight one time—or the athletes themselves decided on their own to attempt to max out after the main conditioning program was over. Swank denies he told them to max out and claims the athletes decided themselves to do so. Hayden did not indicate whose idea it was in his testimony, but another athlete who was present indicated in a sworn statement that Swank instructed them to max out.  For purposes of a summary judgment motion, the recollection of the other student should have been accepted.

{¶ 3}  Swank and other students "spotted" Hayden by standing near him to lift the weights off of Hayden if he could not complete the lift. Hayden completed the squat lift unassisted.  However, Hayden testified that when the weight came off his back, he felt pain in his spine, felt dizzy, and suffered pain in his legs. Hayden informed Swank that he had hurt his back and Swank told Hayden he did not have to complete a run afterward. However, Hayden decided to run. Hayden then participated in some after-school activities at the school with his family. Hayden later discovered that he had compression fractures of his spine, apparently as a result of the 200 pounds being loaded on his shoulders.

{¶ 4}  On July 28, 2015, appellants filed a complaint alleging Swank was liable because he had Hayden perform the squat lift, and GCCS was liable for Swank's conduct pursuant to respondeat superior. Hayden's parents alleged claims for loss of consortium. On June 2, 2016, appellees filed two motions for summary judgment, one relating to Hayden's claims and one relating to the claims of Hayden's parents. On July 22, 2016, the trial court granted summary judgment to appellees on all claims raised by all parties. Appellants appeal the trial court's decision asserting the following assignments of error:

> [I.]  The Trial Court erred in granting summary judgment since there is clearly genuine issues of material fact that Coach Swank's conduct was a reckless disregard for the safety of others when he intentionally instructed members of the 7th grade football team, including Plaintiff-Appellant, Hayden Lemaster, a 98 pound, 6th grade student with zero weight lifting experience, to "max out" on the squat lift and/or attempt a squat lift with an excessive amount of weight on the first day of training in the weight room when he knew or had

reason to know facts which would lead a reasonable man to realize that his conduct created an unreasonable risk of physical harm.

[II.]  The Trial Court erred in failing to restrict the application of <u>Marchetti v. Kalish</u>, 1990, 53 Ohio St.3rd 95, since serious injuries such as compression fractures to the spine should not be an assumed or accepted risk likely to occur to 6th and 7th graders learning the basics of weight training at the very beginning of their competitive athletic career.

{¶ 5}  Appellants argue in their first assignment of error that the trial court erred when it granted summary judgment because there were genuine issues of material fact remaining as to whether Swank's conduct showed a reckless disregard for the safety of others when he intentionally instructed members of the football team to max out on the squat lift and/or attempt a squat lift with an excessive amount of weight when he knew or had reason to know facts that would lead a reasonable person to realize that his conduct created an unreasonable risk of physical harm.

{¶ 6}  Summary judgment is appropriate when the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29. Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *Hudson* at ¶ 29. This means that an appellate court conducts an independent review without deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, LLC*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 7}  When seeking summary judgment on the grounds that the nonmoving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party does not discharge this initial burden under Civ.R. 56 by simply making a

conclusory allegation that the nonmoving party has no evidence to prove its case. *Id*. Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the nonmoving party has no evidence to support its claims. *Id*. If the moving party meets its burden, then the nonmoving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); *Dresher* at 293. If the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. *Id*.

{¶ 8} In the present case, appellants argue there remain genuine issues of material fact that create a question as to whether Swank's actions were reckless under *Marchetti v. Kalish*, 53 Ohio St.3d 95, 100 (1990). "Under the doctrine of primary assumption of the risk, a plaintiff voluntarily engaged in a recreational activity assumes the inherent risks of that activity and cannot recover for injuries sustained while engaging in that activity unless the defendant acted recklessly or intentionally in causing the injuries." *Wolfe v. AmeriCheer, Inc.*, 10th Dist. No. 11AP-550, 2012-Ohio-941, ¶ 14, citing *Marchetti* at syllabus. Here, appellants contend only that Swank acted recklessly.

{¶ 9} Ordinarily the question of whether conduct was reckless is properly left for a jury. *Wolfe* at ¶ 17, citing *Matkovich v. Penn Cent. Transp. Co.*, 69 Ohio St.2d 210, 214 (1982). "Nevertheless, the [Supreme Court] has not hesitated to find summary judgment appropriate where the facts, when construed in favor of the nonmoving party, fail to rise to the level of reckless conduct." *Kurz v. Great Parks of Hamilton Cty.*, 1st Dist. No. C-150520, 2016-Ohio-2909, ¶ 26, citing *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, ¶ 92.

{¶ 10} "Recklessness is a high standard." *Lovegrove v. Stapleton*, 2d Dist. No. 2014-CA-96, 2015-Ohio-1669, ¶ 34, citing *Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, ¶ 37. " 'While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it.' " *Thompson v. McNeill*, 53 Ohio St.3d 102, 105 (1990), *abrogated on other grounds*, *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, ¶ 31, quoting 2 Restatement of the Law 2d, Torts, Section 500, Comment f (1965). "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of

harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson* at ¶ 34, citing *Thompson* at 104-05.

{¶ 11} " '[T]he difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of risk, but this difference of degree is so marked as to amount substantially to a difference in kind.' " *Taylor v. Mathys*, 3d Dist. No. 14-04-32, 2005-Ohio-150, ¶ 15, quoting 2 Restatement of the Law 2d, Torts, Section 500, Comment g (1965). For an act to be reckless, " 'the risk must itself be an unreasonable one under the circumstances.' " (Emphasis omitted.)  *Thompson* at 105, quoting 2 Restatement of the Law 2d, Torts, Section 500, Comment g (1965). " 'What constitutes an unreasonable risk under the circumstances of a sporting event must be delineated with reference to the way the particular game is played, *i.e.*, the rules and customs that shape the participants' ideas of foreseeable conduct in the course of a game.' "  *Wolfe* at ¶ 19, quoting *Thompson* at 105. "Therefore, in order for a participant's conduct to be reckless, it must be both outside the rules of the activity and create an unreasonable risk of harm." *Taylor* at ¶ 17.

{¶ 12} Here, appellants claim Swank acted recklessly when he either observed that some team members were attempting to max out on the squat lift and immediately joined in by spotting the lifters and encouraging them to make the lift, or when he instructed the boys to max out.  Appellants contend that Swank was actively involved and placed a dangerous amount of weight on Hayden's neck, placing enormous pressure on his young spine, when Hayden had no experience in lifting weights.  Appellants point out that Swank agreed in his deposition that kids who engage in heavy weightlifting are at risk of injuring their growing bones, muscles, and joints.  Swank also claimed to be an expert in weight lifting.

{¶ 13} In support of their claims, appellants cite *Sicard v. Univ. of Dayton*, 104 Ohio App.3d 27 (2d Dist.1995).  In *Sicard,* the plaintiff was a college basketball player performing a bench press and was injured when two spotters failed to prevent the weight from striking the plaintiff, and a third spotter failed to spot him at all. The appellate court found the trial court erred when it granted summary judgment to the defendants. Appellants in the present case claim *Sicard* is analogous to the current case.

{¶ 14} Appellants also argue there was a genuine issue of material fact as to whether Hayden used proper technique. Appellants point out that appellees' claim Hayden used the proper technique, while Swank testified that, if Hayden was injured, he must have been performing the lift improperly by placing the bar on his neck instead of his shoulders. The trial court found Swank's conduct was not reckless because he instructed Hayden on the proper technique. Appellants also contend that Swank allowing approximately 200 pounds of weight on the bar was dangerous and reckless given Hayden's age, weight, and experience.

{¶ 15} Appellants further point out they submitted the affidavit of Charles Gresham, a strength and conditioning coach, who averred that any coach who allows a sixth or seventh grader to max out is reckless and creates a substantial increase in harm to the kids.

{¶ 16} After a review of the evidence in the present case, we find the trial court erred when it found appellants failed to raise a genuine issue of material fact. Appellants have showed that Swank who claimed to be an expert as to weight lifting exhibited a conscious disregard of or indifference to a known or obvious risk of harm to Hayden that was unreasonable under the circumstances and was substantially greater than negligent conduct.

{¶ 17} Hayden weighed less than 100 pounds. He was loaded with a weight over twice that amount. He was not experienced in weight training. He was only twelve-years old. He could rely on his coach as a person in authority and a person who claimed expertise in weight lifting to exercise good judgment in the exercises and weights his coach was supervising. The fact that Hayden suffered a compression fracture of his spine is a strong indication that too much weight was loaded on his neck and shoulders.

{¶ 18} A jury could reasonably find that loading 200 pounds on a sixth grader's back and neck resulting in a compression fracture was reckless.

{¶ 19} We sustain the first assignment of error.

{¶ 20} Our finding as to the first assignment of error moots the second assignment of error. We note, however, that this is not an assumption of the risk case. A twelve or thirteen-year-old sixth grader is only half-way to full brain development. His frontal lobes

are no where near full development and he cannot be expected to fully appreciate the danger his coach is asking him to experience.

{¶ 21} In short, the first assignment of error is sustained, rendering the second assignment of error moot. The summary judgment to the benefit of coach Swank is reversed. The summary judgment for the benefit of Grove City Christian School based on respondeat superior is also reversed as a result. We remand the case to the trial court for further appropriate proceedings.

*Judgment reversed and remanded*
*for further proceedings.*

HORTON, J., concurs.
BROWN, J., concurs in judgment only.

BROWN, J., concurring in judgment only.

{¶ 22} For the following reasons, I respectfully concur in judgment only. The majority cites the affidavit of Charles Gresham as evidence of reckless conduct by Sean P. Swank; however, the trial court declined to consider the affidavit due to appellants' untimely disclosure of Gresham as a witness, pursuant to Loc.R. 43.04 of the Court of Common Pleas of Franklin County, General Division. This court has approved of reading Loc.R. 43 in conjunction with Civ.R. 56(E). *See Foster v. Sullivan*, 10th Dist. No. 13AP-876, 2014-Ohio-2909, ¶ 19-21, and *Nu-Trend Homes v. Law Offices of DeLibera, Lyons & Bibbo*, 10th Dist. No. 01AP-1137, 2003-Ohio-1633, ¶ 71-73 (the trial court was authorized under Loc.R. 43 to exclude doctor's affidavit from summary judgment evidence when the witness was not timely disclosed). Without consideration of Gresham's affidavit, I would conclude appellants failed to raise a genuine issue of material fact as to whether Swank exhibited a conscious disregard of or indifference to a known or obvious risk of harm to Hayden Lemaster that was unreasonable under the circumstances and was substantially greater than negligent conduct.

{¶ 23} However, Loc.R. 43.04 allows for overlooking a failure to properly disclose a witness when good cause exists and justice so demands. In the present case, the trial court did not mention whether good cause existed or justice demanded that it permit the untimely disclosure of Gresham. The trial court simply indicated that the disclosure was untimely, unlike in *Foster*, in which we found no error in excluding the affidavit of an

untimely disclosed witness when the trial court specifically noted the good-cause exception in its judgment entry and chose not to apply it. *See Foster* at ¶ 21. Without any reference to the exception in Loc.R. 43.04, we have no way to know whether the trial court considered it. For these reasons, I would find the trial court's exclusion of Gresham's affidavit was improper.  Therefore, I respectfully concur in judgment only.

_____