[Cite as *Whalen v. T.J. Automation, Inc.*, 2019-Ohio-1279.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

JILLIAN WHALEN ET AL.,

    PLAINTIFFS-APPELLANTS,          CASE NO. 7-18-27

    v.

T.J. AUTOMATION, INC. ET AL.,          O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Henry County Common Pleas Court
Trial Court No. 17CV0100

Judgments Affirmed

Date of Decision: April 8, 2019

APPEARANCES:

    *Paul W. Flowers* for Appellants

    *J. Alan Smith* for Appellees, Tracy and Amy Hammersmith

    *Paul D. Eklund* for Appellee, T.J. Automation, Inc.

**PRESTON, J.**

{¶1} Plaintiffs-appellants, Jillian Whalen ("Whalen"), individually and in her capacity as Administrator of the Estate of Jackson Spees ("Jackson"), appeal the March 16 and August 2, 2018 judgments of the Henry County Court of Common Pleas granting the motions for summary judgment of defendants-appellees, T.J. Automation, Inc. ("T.J. Automation") and Tracy and Amy Hammersmith ("Tracy" and "Amy") (collectively the "Hammersmiths"). For the reasons that follow, we affirm.

{¶2} T.J. Automation manufactures machines that bend tubing for a variety of mechanical and automotive products. (Doc. No. 70, Tracy's May 15, 2018 Depo. at 11). Tracy is the president of T.J. Automation. (*Id.* at 9). His wife, Amy, serves as T.J. Automation's Director of Human Resources and Finance. (Doc. No. 71, Amy's May 15, 2018 Depo. at 11).

{¶3} On June 16-17, 2017, T.J. Automation hosted a party on its premises in Archbold, Henry County, Ohio to celebrate its 20th anniversary. (*See* Doc. No. 36, Plaintiffs' Exs. C, D). The 20th anniversary party was a private function for T.J. Automation, its employees, and their families. (*See id.*, Plaintiffs' Ex. D). Amy was primarily responsible for planning the party, which featured a wide range of activities including a cornhole tournament, "inflatables," face painting, and a live-band performance on the evening of June 17. (Doc. No. 70, Tracy's May 15, 2018

Depo. at 12-13); (Doc. No. 71, Amy's May 15, 2018 Depo. at 12); (Doc. No. 36, Plaintiffs' Exs. B, C). Food and alcoholic beverages were also provided to attendees. (*See* Doc. No. 36, Plaintiffs' Exs. C, K).

{¶4} At the time of the 20th anniversary party, Jonathan Spees ("Spees"), Jackson's father, was employed by T.J. Automation as a "[m]achine builder, fixture builder." (Doc. No. 69, Spees's May 15, 2018 Depo. at 14). On June 17, 2017, five-year-old Jackson accompanied Spees to the anniversary party along with Spees's then-girlfriend, Sierra Kennedy ("Kennedy"). (*Id.* at 25). Once they arrived at the party, Spees supervised Jackson as Jackson waded in the water of a retention pond located on the property. (*Id.* at 30). Although T.J. Automation did not ordinarily permit swimming in the retention pond, various water toys, including an inflatable raft owned by the Hammersmiths, were placed in and around the pond during the anniversary party and multiple children were openly swimming and wading in the water. (*See* Doc. No. 36, Plaintiffs' Exs. A, F, G, I); (*See* Doc. No. 69, Spees's May 15, 2018 Depo. at 60-65, 68); (*See* Doc. No. 71, Amy's May 15, 2018 Depo. at 26, 32); (*See* Doc. No. 72, Kennedy's May 15, 2018 Depo. at 16).

{¶5} After spending approximately one and a half hours traveling back and forth between the retention pond, the "bouncy houses," and the food service tables, Spees and Kennedy left Jackson playing in the pond to sit beneath the shade of a tent situated approximately 30 to 40 feet from where Jackson was playing. (*See*

Doc. No. 69, Spees's May 15, 2018 Depo. at 30, 69). According to Spees, Jackson was wading in water up to his "[k]nee area," and Spees instructed Jackson not to go into the water any further. (*Id.* at 68-69). Within five minutes of sitting down under the tent, Spees and Kennedy lost sight of Jackson. (*Id.* at 70). They then began searching for Jackson. After searching throughout the inflatables, campers, and other structures on the premises, Spees and a handful of other partygoers entered the pond to search for Jackson. (*Id.* at 70-73). Eventually, approximately 10 to 15 minutes after losing sight of Jackson, Spees discovered Jackson's body submerged in roughly 3 to 4 feet of water. (*Id.* at 51, 73). Although attempts were made to resuscitate Jackson, he was later pronounced dead. Drowning was established as the likely cause of Jackson's death.

{¶6} On August 21, 2017, Whalen filed a complaint against T.J. Automation, Spees, an unnamed corporation, and various John and Jane Does. (Doc. No. 1). Whalen's complaint asserted claims of negligence and recklessness against T.J. Automation and Spees. (*Id.*). The complaint also set out a claim against the unnamed corporation asserting that the corporation negligently contributed to Jackson's death by failing to follow various sections of the Ohio Revised Code applicable to the rental of amusement park equipment. (*Id.*). T.J. Automation filed its answer to Whalen's complaint on September 20, 2017. (Doc. No. 4).

{¶7} On January 2, 2018, Whalen filed a motion for leave to file an amended complaint in order to add the Hammersmiths as new party defendants and to include a newly discovered claim of spoliation of evidence against T.J. Automation. (Doc. No. 20). While Whalen's motion for leave was pending, T.J. Automation filed a motion for summary judgment on January 29, 2018. (Doc. No. 24). T.J. Automation made several arguments in support of its motion for summary judgment. First, T.J. Automation argued that because Jackson was engaged in a recreational activity, swimming, before his death, the recreational activity doctrine barred Whalen's claims of negligence. (*Id.*). Furthermore, T.J. Automation argued, because the recreational activity doctrine applied, Whalen was required to present evidence that T.J. Automation intentionally or recklessly caused Jackson's death, and the record was devoid of such evidence. (*Id.*). In the alternative, T.J. Automation argued that it was shielded from liability for negligence under R.C. 1533.181, Ohio's statutory recreational user immunity. (*Id.*). In addition, T.J. Automation contended that the attractive nuisance doctrine did not apply because Jackson was not a trespasser in the retention pond at the time of his death. (*Id.*). Finally, T.J. Automation argued that it was not vicariously liable under the doctrine of respondeat superior for Spees's role in causing Jackson's death because Spees was not acting within the scope of his employment at the time of Jackson's death. (*Id.*).

{¶8} On January 29, 2018, the same day that T.J. Automation filed its motion for summary judgment, the trial court granted Whalen's motion for leave to file an amended complaint. (Doc. No. 25). On February 5, 2018, Whalen filed an amended complaint. (Doc. No. 27). The amended complaint added the Hammersmiths, in their individual capacities, as new party defendants. (*Id.*). The amended complaint asserted various negligence claims against the Hammersmiths as well as a claim for spoliation of evidence. (*Id.*). The claim of spoliation of evidence was also asserted as a new claim against T.J. Automation. (*Id.*). Whalen's spoliation of evidence claim arose from the apparent destruction of the Hammersmiths' inflatable raft, which was located in or around the retention pond on June 17, 2017. (*See id.*). In all other respects, the amended complaint preserved in their entirety the claims against T.J. Automation contained in Whalen's original complaint. (*See id.*). On February 16, 2018, T.J. Automation filed its answer to Whalen's amended complaint. (Doc. No. 34). On February 23, 2018, the Hammersmiths filed their answer to Whalen's amended complaint. (Doc. No. 37).

{¶9} On February 8, 2018, T.J. Automation filed a motion requesting that its January 29, 2018 motion for summary judgment be "referenced and reincorporated as against [Whalen's] * * * Amended Complaint." (Doc. No. 31). On February 22, 2018, Whalen filed her memorandum in opposition to T.J. Automation's motion for

summary judgment. (Doc. No. 36). On March 2, 2018, T.J. Automation filed its reply to Whalen's memorandum in opposition. (Doc. No. 38).

{¶10} On March 16, 2018, the trial court granted T.J. Automation's motion for summary judgment. (Doc. No. 42). The trial court concluded that the recreational activity doctrine barred Whalen's negligence claims against T.J. Automation, that T.J. Automation did not intentionally or recklessly cause Jackson's death, that the attractive nuisance doctrine did not apply because Jackson was not a trespasser, and that T.J. Automation was not vicariously liable for Spees's tortious conduct, if any, under the doctrine of respondeat superior. (*Id.*). Finally, the trial court observed that because T.J. Automation's motion for summary judgment did not request summary judgment as to Whalen's later-added claim of spoliation of evidence, Whalen's spoliation of evidence claim against T.J. Automation remained outstanding. (*Id.*).

{¶11} On May 29, 2018, T.J. Automation filed a second motion for summary judgment with respect to the only remaining claim against it—Whalen's claim of spoliation of evidence. (Doc. No. 65). On May 30, 2018, the Hammersmiths filed a motion for summary judgment as to all claims asserted against them by Whalen in her amended complaint. (Doc. No. 67).

{¶12} On June 18, 2018, Whalen filed a memorandum in opposition to T.J. Automation's second motion for summary judgment. (Doc. No. 97). In addition,

Whalen's memorandum in opposition also included a motion requesting that the trial court reconsider its March 16, 2018 decision granting T.J. Automation's first motion for summary judgment. (*Id.*). Finally, Whalen's memorandum in opposition also included a request for "other alternative judicial relief," specifically a request that a decision on T.J. Automation's second motion for summary judgment be continued to allow for further discovery. (*Id.*). In support of her request for a continuance to conduct additional discovery, Whalen attached to her memorandum in opposition an affidavit executed by her trial counsel. (*Id.*, Plaintiffs' Ex. F). On July 5, 2018, T.J. Automation filed its reply to Whalen's memorandum in opposition to its second motion for summary judgment. (Doc. No. 125). That same day, T.J. Automation filed its memorandum in opposition to Whalen's motion for reconsideration and "alternative judicial relief." (Doc. No. 126). On July 12, 2018, Whalen filed a reply to T.J. Automation's memorandum in opposition to her motion for reconsideration and "alternative judicial relief." (Doc. No. 140).

{¶13} In addition, on June 18, 2018, Whalen filed a memorandum in opposition to the Hammersmiths' motion for summary judgment. (Doc. No. 98). In her memorandum in opposition, Whalen also requested that the trial court "stay any decision under Civil Rule 56(F) until the discovery process concludes." (*Id.*). In contrast to her request for a continuance with respect to T.J. Automation's second motion for summary judgment, Whalen did not attach an affidavit explaining why

she could not fully oppose the Hammersmiths' motion for summary judgment without additional discovery to her request for a continuance of a decision on the Hammersmiths' motion for summary judgment. On June 22, 2018, the Hammersmiths filed both a reply to Whalen's memorandum in opposition to their motion for summary judgment and a memorandum in opposition to Whalen's request for a continuance under Civ.R. 56(F). (Doc. No. 111).

{¶14} On August 2, 2018, the trial court granted T.J. Automation's second motion for summary judgment. (Doc. No. 152). That same day, the trial court granted the Hammersmiths' motion for summary judgment. (Doc. No. 153). The trial court concluded that the recreational activity doctrine barred Whalen's negligence claims against the Hammersmiths, that the attractive nuisance doctrine did not apply because Jackson was not a trespasser, and that Whalen failed to establish the elements of a claim of spoliation of evidence because the raft that had allegedly been destroyed was located and made available to Whalen subsequent to the filing of her amended complaint. (*Id.*).

{¶15} On August 27, 2018, Whalen filed a notice of appeal. (Doc. No. 158). Whalen raises three assignments of error for our review. Because they concern related issues, we will address Whalen's first and second assignments of error together, followed by her third assignment of error.

### Assignment of Error No. I

**The trial court erred, as a matter of law, by granting summary judgment upon Plaintiff-Appellant's wrongful death and survivorship claims against Defendant-Appellee, T.J. Automation, Inc. [Journal Entries dated March 16, 2018, and August 2, 2018]**

### Assignment of Error No. II

**The trial court erred, as a matter of law, by granting summary judgment upon Plaintiff-Appellant's wrongful death and survivorship claims against Defendant-Appellees, Tracey and Amy Hammersmith. [Journal Entry dated August 2, 2018]**

{¶16} In her first and second assignments of error, Whalen argues that the trial court erred by granting T.J. Automation's and the Hammersmiths' motions for summary judgment. Specifically, Whalen argues that the trial court erred by granting T.J. Automation's and the Hammersmiths' motions for summary judgment because the recreational activity doctrine does not apply under the particular facts of this case. In addition, Whalen argues that even if the recreational activity doctrine does apply to this case, there exists a genuine issue of material fact whether T.J. Automation and the Hammersmiths recklessly caused Jackson's death. Finally, Whalen argues that the trial court erred by concluding that T.J. Automation could not be held vicariously liable for Spees's potential tortious conduct under the

doctrine of respondeat superior despite the fact that Jackson's death occurred at a company party from which T.J. Automation expected to derive a business benefit.[1]

**{¶17}** We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). "De novo review is independent and without deference to the trial court's determination." *ISHA, Inc. v. Risser*, 3d Dist. Allen No. 1-12-47, 2013-Ohio-2149, ¶ 25, citing *Costner Consulting Co. v. U.S. Bancorp*, 195 Ohio App.3d 477, 2011-Ohio-3822, ¶ 10 (10th Dist.). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

**{¶18}** "The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact." *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 13, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Id.*, citing *Dresher* at 292. "The nonmoving party must then rebut with specific facts showing the existence of

---

[1] Whalen does not appeal the trial court's grant of summary judgment as to her attractive nuisance claims or her claims of spoliation of evidence.

a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings." *Id.*, citing *Dresher* at 292 and Civ.R. 56(E).

**{¶19}** Material facts are those facts "'that might affect the outcome of the suit under the governing law.'" *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). "Whether a genuine issue exists is answered by the following inquiry: [d]oes the evidence present 'a sufficient disagreement to require submission to a jury' or is it 'so one-sided that one party must prevail as a matter of law[?]'" *Id.*, quoting *Anderson* at 251-252.

**{¶20}** We turn first to Whalen's argument that the trial court erred by concluding that the recreational activity doctrine barred her negligence claims against T.J. Automation and the Hammersmiths. "'"[I]n order to establish actionable negligence, one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom."'" *Drury v. Blackston*, 3d Dist. Allen No. 1-15-39, 2015-Ohio-4725, ¶ 10, quoting *Carnes* at ¶ 14, quoting *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285 (1981). "The existence of a duty in a negligence action is a question of law for the court to decide." *Booth v. Walls*, 3d Dist. Henry No. 7-12-23, 2013-Ohio-3190, ¶ 47, citing *Brewster v. Fowler*, 11th Dist. Trumbull No. 99-T-0091, 2000 WL 1566528, *3 (Oct. 13, 2000), citing *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989). The recreational activity

doctrine is a variation on the doctrine of primary assumption of risk. *See Gentry v. Craycraft*, 101 Ohio St.3d 141, 2004-Ohio-379, ¶ 11; *Clark v. Barcus*, 5th Dist. Muskingum No. CT2017-0019, 2018-Ohio-152, ¶ 13; *Konet v. Roberts*, 11th Dist. Portage No. 2015-P-0030, 2016-Ohio-1306, ¶ 27; *Drury* at ¶ 11. "[A] successful primary assumption of risk defense means that the duty element of negligence is not established as a matter of law," and thus, the "defense prevents the plaintiff from even making a prima facie case" of negligence. *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 431-432 (1996).

**{¶21}** Under the recreational activity doctrine, "'a plaintiff who voluntarily engages in a recreational activity or sporting event assumes the inherent risks of that activity and cannot recover for injuries sustained in engaging in the activity unless the defendant acted recklessly or intentionally in causing the injuries.'" *Ochall v. McNamer*, 10th Dist. Franklin No. 15AP-772, 2016-Ohio-8493, ¶ 34, quoting *Morgan v. Ohio Conference of the United Church of Christ*, 10th Dist. Franklin No. 11AP-405, 2012-Ohio-453, ¶ 13, citing *Crace v. Kent State Univ.*, 185 Ohio App.3d 534, 2009-Ohio-6898, ¶ 13 (10th Dist.), citing *Santho v. Boy Scouts of Am.*, 168 Ohio App.3d 27, 2006-Ohio-3656, ¶ 12 (10th Dist.). *See Marchetti v. Kalish*, 53 Ohio St.3d 95 (1990), paragraph one of the syllabus. "'No liability attaches for injuries caused by negligence that occurs during recreational activities.'" *Drury* at ¶ 11, quoting *Taylor v. Mathys*, 3d Dist. Union No. 14-04-32, 2005-Ohio-150, ¶ 10,

citing *Gentry* at ¶ 6, citing *Thompson v. McNeill*, 53 Ohio St.3d 102 (1990), paragraphs one and two of the syllabus, *abrogated on other grounds*, *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711.

**{¶22}** "'The rationale [for the recreational activity doctrine] is that certain risks are so inherent in some activities that the risk of injury is unavoidable.'" *Ochall* at ¶ 34, quoting *Crace* at ¶ 13, citing *Collier v. Northland Swim Club*, 35 Ohio App.3d 35, 37 (10th Dist.1987). "'[O]nly those risks directly associated with the activity in question are within the scope of [the recreational activity doctrine].'" *Horvath v. Ish*, 134 Ohio St.3d 48, 2012-Ohio-5333, ¶ 19, quoting *Gallagher* at 432, citing *Cincinnati Baseball Club Co. v. Eno*, 112 Ohio St. 175 (1925). To be covered under the recreational activity doctrine, "'the risk must be one that is so inherent to the * * * activity that it cannot be eliminated.'" *Id.*, quoting *Konesky v. Wood Cty. Agricultural Soc.*, 164 Ohio App.3d 839, 2005-Ohio-7009, ¶ 19 (6th Dist.), citing *Westray v. Imperial Pools & Supplies, Inc.*, 133 Ohio App.3d 426, 432 (6th Dist.1999).

**{¶23}** Here, when viewing the evidence in a light most favorable to Whalen, we find that no genuine issue of material fact exists regarding whether Jackson was engaged in swimming and other water-based recreational activities when he drowned. In response to Whalen's interrogatories, Spees explained:

> Upon arrival, [they] took Jackson to the bounce house and to the pond, where he joined other children already playing in and near the water's edge. After about ten minutes of playing in the water, [they] took Jackson to get some food, and ate at a table under the tent. After Jackson finished eating, he returned to the water, where [Spees] was watching him.

(Doc. No. 36, Plaintiffs' Ex. A). Moreover, in deposition, Spees stated that Jackson waded in the pond "throughout the time period that [they] were there." (Doc. No. 69, Spees's May 15, 2018 Depo. at 32). Spees documented three trips Jackson took into the pond. First, Spees stated that, shortly after arriving at the party, Jackson waded into the pond up to his ankles. (*Id.* at 61). Then, after letting Jackson play in the "bounce houses," Spees returned with Jackson to the pond where Jackson waded into the pond up to "shorts level, just below his waist" and "splash[ed] around in the water." (*Id.* at 64-65). Finally, after eating, Spees and Jackson returned to the pond where Jackson entered the pond up to his "[k]nee area, * * * probably below his knees." (*Id.* at 68). Spees stated that, at that point, he went to sit down under a tent, which was situated approximately 30 to 40 feet away. (*Id.* at 69). Spees remembered instructing Jackson not to "go into the water any farther then [sic] where he was at." (*Id.*). Finally, he stated that the last time he saw Jackson in the pond before finding his submerged body, Jackson was in the pond "[n]o more

than 10 foot" from the Hammersmiths' inflatable raft positioned partially on the shore. (*Id.* at 48). Spees's deposition testimony is representative of the substantial testimony and other evidence regarding Jackson's activities in and around the pond on June 17, 2017. Therefore, there is no genuine issue of material fact that Jackson was engaged in swimming and other water-based recreational activities in the moments before he drowned.

{¶24} Jackson's activities in the retention pond on the day of the anniversary party are best characterized as "swimming." "Swimming is a recreational activity." *Drury*, 2015-Ohio-4725, at ¶ 12, citing *Estate of Vince v. Estate of Smallwood*, 11th Dist. Trumbull No. 2005-T-0017, 2006-Ohio-1697, ¶ 20. "Drowning is an inherent risk of swimming." *Salyer v. Brookview Village Condominium Assn.*, 5th Dist. Fairfield No. 18-CA-08, 2018-Ohio-2255, ¶ 21, citing *Mullens v. Binsky*, 130 Ohio App.3d 64, 70 (10th Dist.1998). *See Kinnison v. Ohio State Univ.*, 10th Dist. Franklin No. 13AP-501, 2013-Ohio-5715, ¶ 7-11. Thus, Jackson was voluntarily participating in a recreational activity in the moments preceding his death and his death was caused by a risk inherent in that activity.

{¶25} Nevertheless, Whalen argues that the recreational activity doctrine is inapplicable to the facts of this case and that the trial court erred by concluding that the doctrine bars her negligence claims against T.J. Automation and the Hammersmiths. First, Whalen argues that T.J. Automation and the Hammersmiths

"rel[y] heavily upon cases involving torts that were committed by minors, <u>not</u> adults who had assumed a special duty of supervision."  (Underlining sic.) (Appellants' Brief at 19).  She also suggests that the recreational activity doctrine "does not preclude a host from being held liable when a special commitment has been undertaken, but has been carelessly disregarded." (*Id.* at 20).  Thus, Whalen appears to argue that T.J. Automation's and the Hammersmiths' negligent supervision of Jackson and the pond area forecloses application of the recreational activity doctrine.

**{¶26}** Whalen's argument is unpersuasive.  "[N]egligent supervision is not an exception to the [recreational activity doctrine]." *Main v. Gym X-Treme*, 10th Dist. Franklin No. 11AP-643, 2012-Ohio-1315, ¶ 15, citing *Schnetz v. Ohio Dept. of Rehab. & Corr.*, 195 Ohio App.3d 207, 2011-Ohio-3927, ¶ 47.  Moreover, the defendant's assumption of responsibility for supervising the plaintiff is immaterial to application of the recreational activity doctrine. *Drury* at ¶ 12, citing *Kinnison* at ¶ 9.  Thus, to the extent that T.J. Automation and the Hammersmiths actually assumed a duty to properly supervise Jackson, their negligent supervision of Jackson would not render the recreational activity doctrine inapplicable.  Instead, Whalen would need to show that Jackson's death was due to T.J. Automation's or the Hammersmiths' intentional or reckless failure to provide appropriate

supervision only once they had undertaken to provide it. There was no duty to undertake to provide such supervision.

**{¶27}** Next, Whalen argues that the cases upon which T.J. Automation and the Hammersmiths rely involve a "young tortfeasor and [a] young victim [who] were willingly engaged in the [recreational] activity" and are "all easily distinguished on th[e] basis * * * [that] the party owing the heightened duties * * * was not participating in the activity." (Appellants' Brief at 19). Therefore, Whalen appears to contend that the recreational activity doctrine cannot be extended to shield nonparticipants from negligence liability for injuries sustained by participants in or spectators to a recreational activity.

**{¶28}** Whalen's argument is without merit. "It is clear that courts generally extend primary assumption of the risk to relieve liability of owners, operators, and sponsors of recreational activities." *Crace*, 185 Ohio App.3d 534, 2009-Ohio-6898, at ¶ 20, citing *Wilson v. Lafferty Volunteer Fire Dept.*, 7th Dist. Belmont No. 00 BA 29, 2001 WL 1530952 (Nov. 29, 2001), *Bundschu v. Naffah*, 147 Ohio App.3d 105, 2002-Ohio-607 (7th Dist.), *Whitaker v. Davis*, 12th Dist. Warren No. CA96-07-060, 1997 WL 30552 (Jan. 27, 1997), *Rodriguez v. O.C.C.H.A.*, 7th Dist. Mahoning No. 99 C.A. 30, 2000 WL 1486449 (Sept. 26, 2000), and *Kline v. OID Assocs., Inc.*, 80 Ohio App.3d 393 (9th Dist.1992). "'Non-participants involved in the game may be held to the same standard as participants.'" *Id.*, quoting *Rodriguez*

-18-

at *2, citing *Kline* at 395-396. *See Young v. Eagle*, 12th Dist. Clermont No. CA2016-09-063, 2017-Ohio-7211, ¶ 24 (collecting cases and noting that "other courts of appeal[s] have extended the primary assumption of risk doctrine to non-participant defendants"); *Drury*, 2015-Ohio-4725, at ¶ 2, 12 (shielding a non-participant supervisor from negligence liability under the recreational activity doctrine). Thus, T.J. Automation's and the Hammersmiths' status as non-participant hosts and organizers does not defeat use of the recreational activity doctrine.

{¶29} Furthermore, to the extent that Whalen suggests that the recreational activity doctrine does not apply because Jackson was only five years old at the time of his death, Whalen's argument is incorrect. "'[T]hose entirely ignorant of the risks of a [recreational activity], still assume the risk * * * by participating in [the activity] * * *. The law simply deems certain risks as accepted by [the] plaintiff regardless of actual knowledge or consent.'" *Gentry*, 101 Ohio St.3d 141, 2004-Ohio-379, at ¶ 12, quoting Gilles, *From Baseball Parks to the Public Arena: Assumption of the Risk in Tort Law and Constitutional Libel Law*, 75 Temple L.Rev. 231, 236 (2002). Therefore, "in a personal injury action brought for injuries sustained while an individual is a participant in * * * a * * * recreational activity, the age of the participant * * * and whether he or she was capable of appreciating the inherent risks are immaterial." *Id.* at ¶ 13. Thus, application of the recreational activity

doctrine is not barred by the fact that Jackson was only five years old or by the fact that he may have been incapable of appreciating the risks of swimming in the retention pond. *See Drury* at ¶ 12.

**{¶30}** Finally, Whalen argues that the recreational activity doctrine is inapplicable because "reasonable minds can conclude that drownings are not an unavoidable consequence of hosting work events for employees and their families." (Appellants' Brief at 20). Whalen's argument is unconvincing because she defines the scope of the "recreational activity" at issue in this case too broadly. Although a company party may be considered recreational in a general sense, the proper focus of the analysis in cases such as this is not on whether a particular injury was an "unavoidable consequence" of attendance at a generic company function. Rather, recreational activity doctrine analysis should focus on whether an injury resulted from a risk inherent in a specific sport, game, or activity offered to attendees at the party. Therefore, Whalen's argument is without merit because although drowning may not be an inherent risk at every imaginable company party, it is certainly an inherent risk at a company party where attendees are invited to participate in water-based activities and ultimately take part in those water-based activities.

**{¶31}** Accordingly, in light of the foregoing, we conclude that the trial court did not err by holding that the recreational activity doctrine applies to bar Whalen's negligence claims against T.J. Automation and the Hammersmiths.

{¶32} Having concluded that the trial court properly applied the recreational activity doctrine to bar Whalen's negligence claims, we now consider whether a genuine issue of material fact exists regarding whether T.J. Automation or the Hammersmiths intentionally or recklessly caused Jackson's death. Whalen does not argue that T.J. Automation or the Hammersmiths intentionally caused Jackson's death. Instead, she argues that there is a genuine issue of material fact concerning whether T.J. Automation or the Hammersmiths recklessly caused Jackson's death.

{¶33} "Recklessness is a high standard." *Lovegrove v. Stapleton*, 2d Dist. Clark No. 2014-CA-96, 2015-Ohio-1669, ¶ 34, citing *Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, ¶ 37. "'Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct.'" *Id.*, quoting *Anderson*, 134 Ohio St.3d 380, 2012-Ohio-5711, at ¶ 34, citing *Thompson*, 53 Ohio St.3d at 104-105, adopting 2 Restatement of the Law 2d, Torts, Section 500, at 587 (1965), and citing *Argabrite v. Neer*, 2d Dist. Montgomery No. 26220, 2015-Ohio-125, ¶ 36, quoting *Moon v. Trotwood Madison City Schools*, 2d Dist. Montgomery No. 25779, 2014-Ohio-1110, ¶ 21. "'The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of risk, but this difference of degree is so

marked as to amount substantially to a difference in kind.'" *Taylor*, 2005-Ohio-150, at ¶ 15, quoting 2 Restatement of the Law 2d, Torts, Section 500, Comment g (1965). "'The actor must be conscious that his conduct will in all probability result in injury.'" *Kurz v. Great Parks of Hamilton Cty.*, 1st Dist. Hamilton No. C-150520, 2016-Ohio-2909, ¶ 24, quoting *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, paragraph three of the syllabus. "The consciousness that conduct will likely cause injury is what distinguishes recklessness from negligence." *Id.* at ¶ 25.

{¶34} "Ordinarily the question of whether conduct was reckless is properly left for a jury." *Lemaster v. Grove City Christian School*, 10th Dist. Franklin No. 16AP-587, 2017-Ohio-8459, ¶ 9, citing *Wolfe v. AmeriCheer, Inc.*, 10th Dist. Franklin No. 11AP-550, 2012-Ohio-941, ¶ 17, citing *Matkovich v. Penn Cent. Transp. Co.*, 69 Ohio St.2d 210, 214 (1982). *See Thompson v. Bagley*, 3d Dist. Paulding No. 11-04-12, 2005-Ohio-1921, ¶ 51. "'Nevertheless, the [Supreme Court] has not hesitated to find summary judgment appropriate where the facts, when construed in favor of the nonmoving party, fail to rise to the level of reckless conduct.'" *Lemaster* at ¶ 9, quoting *Kurz* at ¶ 26, citing *O'Toole* at ¶ 92. *See Booth*, 2013-Ohio-3190, at ¶ 57.

{¶35} Here, Whalen argues that T.J. Automation's and the Hammersmiths' "unwilling[ness] to provide any professional supervision at all" at the pond creates a genuine issue of material fact regarding whether T.J. Automation or the

Hammersmiths recklessly caused Jackson's death. (Appellants' Brief at 23). Whalen's argument is without merit. Under the particular facts of this case, even when they are viewed in a light most favorable to Whalen, we cannot say that the risk of harm posed to Jackson while he played in the retention pond was an unreasonable one that was substantially greater than the degree of risk associated with negligent conduct. As indicated above, for a course of conduct to be "reckless," the actor must consciously disregard or be indifferent to a known or obvious risk. *Lovegrove* at ¶ 34. Importantly, the risk ""must itself be *an unreasonable one under the circumstances*."" (Emphasis added.) *Brown v. Harris*, 2d Dist. Montgomery No. 27069, 2017-Ohio-2607, ¶ 24, quoting *Thompson*, 53 Ohio St.3d at 105, quoting 2 Restatement of the Law 2d, Torts, Section 500, Comment a (1965).

{¶36} Under the circumstances presented, we cannot say that there was an unreasonable risk that Jackson could drown in the retention pond. Jackson was brought to the anniversary party by Spees. There is no evidence that Spees was required to bring Jackson to the party or that Spees had to let Jackson play in the retention pond. Rather, the evidence suggests that parents voluntarily permitted their children to play in the retention pond and that each parent assumed responsibility for watching their own children as they played. Furthermore, the record contains no evidence suggesting that T.J. Automation or the Hammersmiths

knew of any latent hazards in the pond that would have increased the need for professional supervision. Moreover, although alcoholic beverages were provided to the guests, there is no evidence that Spees was overserved or that T.J. Automation or the Hammersmiths instituted a policy of overserving the guests. Finally, there is no evidence that T.J. Automation or the Hammersmiths were aware of any deficiencies Jackson may have had as a swimmer that would have required supervision in excess of that provided by Spees. Therefore, especially considering that Spees was monitoring Jackson as he played in the retention pond, the failure of T.J. Automation and the Hammersmiths to provide professional supervision did not create an unreasonable risk that Jackson would drown. We cannot conclude that they were conscious that their actions would, in all probability, result in Jackson's injury or death.

{¶37} In sum, we conclude that the trial court did not err by granting summary judgment in favor of T.J. Automation and the Hammersmiths on Whalen's claims of direct negligence and recklessness.

{¶38} We turn next to Whalen's argument that the trial court erred by granting summary judgment in favor of T.J. Automation on her claim that T.J. Automation is vicariously liable for Spees's role in causing Jackson's death. Specifically, Whalen contends that a genuine issue of material fact exists regarding whether Spees was "furthering his employer's interest when he joined the

gathering," thereby exposing T.J. Automation to vicarious liability under the doctrine of respondeat superior. (*See* Appellants' Brief at 15-17).

{¶39} "The respondeat superior doctrine makes an employer or principal vicariously liable for the torts of its employees or agents." *Auer v. Paliath*, 140 Ohio St.3d 276, 2014-Ohio-3632, ¶ 13, citing *Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St.3d 435, 438 (1994). "In order for an employer to be liable under the doctrine of respondeat superior, the employee's tortious conduct must be committed within the scope of his employment." *Hudson v. Flores*, 3d Dist. Allen No. 1-15-42, 2016-Ohio-253, ¶ 20, citing *Cooke v. Montgomery Cty.*, 158 Ohio App.3d 139, 2004-Ohio-3780, ¶ 17 (2d Dist.). "'An employee's conduct is within the scope of his employment if it is the type of action which he is employed to perform, occurs substantially within the authorized limits of time and space [of employment], and is actuated, at least in part, by a purpose to serve the master.'" *Id.*, quoting *Armaly v. Wapakoneta*, 3d Dist. Auglaize No. 2-05-45, 2006-Ohio-3629, ¶ 45, citing *Cooke* at ¶ 20. "[A]lthough scope of agency typically is a jury question, the Supreme Court of Ohio has not carved out an exception to summary judgment practice under Civ.R. 56 exclusively for vicarious liability claims." *Carter v. Gerbec*, 9th Dist. Summit No. 27712, 2016-Ohio-4666, ¶ 34. "'[S]cope of employment becomes a question of law'" susceptible to resolution by summary judgment "when 'reasonable minds can come to but one conclusion * * * regarding

scope of employment.'"  *Id.* at ¶ 25, quoting *Osborne v. Lyles*, 63 Ohio St.3d 326, 330 (1992).  That is, the scope of an employee's employment becomes a question of law "'"when "the facts are undisputed and no conflicting inferences are possible."'"  *Osborne* at 330, quoting *Mary M. v. Los Angeles*, 54 Cal.3d 202, 213 (1991), quoting *Perez v. Van Groningen & Sons, Inc.*, 41 Cal.3d 962, 968 (1986).

{¶40} We conclude that the trial court did not err by granting summary judgment in favor of T.J. Automation on Whalen's claim that T.J. Automation is vicariously liable for Spees's alleged tortious conduct.  Whalen argues that there is a genuine issue of material fact concerning whether Spees was acting in the scope of his employment when he supposedly failed to properly supervise Jackson at the anniversary party because "the Ohio Supreme Court has held that employees attending * * * [work] function[s] can indeed be found to be furthering the[ir] employer's interest." (Appellants' Brief at 16).  In support of her argument, Whalen cites *Kohlmayer v. Keller*, 24 Ohio St.2d 10 (1970), a case that considered whether an employee who was injured at his employer's company picnic was eligible to participate in the workers' compensation fund.  In *Kohlmayer*, the plaintiff was an employee of a small business who broke his neck when he dove off a pier at his employer's premises during a company picnic.  24 Ohio St.2d at 10.  The company picnic was "sponsored, supervised and paid for by the employer and * * * given by the employer for the purpose of generating friendly relations with his employees."

*Id.* at 11-12. In concluding that the employee sustained his injury "in the course of employment," thus making him eligible for participation in the workers' compensation fund, the court observed that although "the plaintiff was not compensated for his presence at the picnic," "many factors * * * indicate[d] that his attendance at the picnic was consistent with his contract of hire and was logically related to his employment." *Id.* at 12. The court noted that the picnic was designed to improve employee relations, and that the employer's involvement in coordinating the function "created a substantial connection between the activity and the employment" such that the swimming injury, which could "reasonably be expected to occur at a company picnic at which swimming facilities are provided," was sustained in the course of employment. *Id.* at 12-13.

**{¶41}** Whalen's reliance on *Kohlmayer* is misplaced. As explained by the Fifth District Court of Appeals:

> The *Kohlmayer* employee, who himself was injured, sought to participate in the Workers Compensation Fund. The *Kohlmayer* decision does not address the issue of an employer's potential liability to a third party as a result of an employee's negligence. * * * In the instant action, [the employee] was not the individual injured, but rather the individual who caused the injury.

*Enders v. Bell-Haun Sys., Inc.*, 5th Dist. Delaware No. 05CAE100065, 2006-Ohio-3246, ¶ 24. We agree with the Fifth District's analysis. The policy considerations underlying the workers' compensation system differ from those that underlie the doctrine of respondeat superior. "The underlying policy in the workers' compensation system is to protect the interests of the employer and employee as opposed to the interests of innocent third-party victims in the context of liability under the doctrine of respondeat superior." *Butler v. Baker*, 90 Ohio App.3d 143, 146 (10th Dist.). Accordingly, what constitutes "course of employment" for purposes of the workers' compensation system is not necessarily coextensive with "scope of employment" for purposes of the doctrine of respondeat superior. *See id.* at 146. *See also id.* at 147-148 (Deshler, J., concurring) (noting that although the "concepts 'arising out of and in the course of employment' and 'within the scope of employment' are similar," there are "inherent differences in the field of workers' compensation and tort law" that suggest that the concepts are not interchangeable); R.C. 4123.95 (providing that the workers' compensation statutes "shall be liberally construed in favor of employees and the dependents of deceased employees").

{¶42} Furthermore, *Kohlmayer* itself was based, at least in part, on the Supreme Court of Ohio's finding that the "business-related benefits, * * * which may be expected to flow to the employer from sponsoring a purely social event for his employees, are sufficiently related to the performance of the required duties of

-28-

the employee so that it is 'correct to say that the Legislature intended the enterprise to bear the risk of injuries incidental to that company event.'" 24 Ohio St.2d at 13, quoting *Sica v. Retail Credit Co.*, 245 Md. 606, 617 (1967). Unlike the workers' compensation statutes wherein the legislature expressed its intention that employers be responsible for injuries sustained by their employees during company-sponsored events from which the employer derived a business benefit, we have found no comparable judgment by the legislature that employers should be liable for the torts of their employees committed during company-sponsored events simply because an employee's tortious conduct happens to transpire at such an event. Therefore, we conclude that *Kohlmayer* does not control whether Spees was acting in the scope of his employment at the time he allegedly caused Jackson's death, and we will proceed to address the scope of Spees's employment in light of the general principles of respondeat superior discussed above.

{¶43} Here, the undisputed evidence establishes that at the time of Jackson's death, Spees was employed as a "[f]ixture builder, machine builder" at T.J. Automation. (Doc. No. 69, Spees's May 15, 2018 Depo. at 10, 14). There is no evidence that Spees was regularly required to supervise children as part of the job he was employed to perform, and there is no indication that T.J. Automation specifically hired and paid Spees to supervise Jackson or other children on the day of the anniversary party. Thus, Spees's supervision of Jackson was not the type of

action T.J. Automation employed Spees to perform. In addition, the fact that Spees's alleged tortious conduct occurred on T.J. Automation's property does not, by itself, mean that T.J. Automation is vicariously liable for that conduct. *See Hudson*, 2016-Ohio-253, at ¶ 24 ("[A] finding that an employee's tortious conduct took place at his place of his employment is not, by itself, sufficient to hold an employer responsible under a theory of respondeat superior."), citing *Armaly*, 2006-Ohio-3629, at ¶ 46. Although the record reflects that the party was held on property owned by T.J. Automation, there is no evidence that the anniversary party was conducted during normal work hours, that Spees was required to attend the party under the terms of his employment contract, or that he was required to bring Jackson to the party. Thus, from the record before us, it cannot be said that Spees's tortious conduct, if any, occurred within the spatial and temporal bounds of his employment. Finally, there is no evidence that Spees's attendance at the party or his assumption of responsibility for supervising Jackson as he played in the pond were motivated by a desire to serve T.J. Automation. While Whalen notes that the party was conducted for the benefit of T.J. Automation's employees and that T.J. Automation admitted that the party was intended to "boost morale and foster comradery," there is no evidence that Spees attended the party with Jackson or allowed Jackson to play in the pond with the purpose of helping T.J. Automation achieve those objectives. Therefore, we conclude that reasonable minds can come to but one conclusion that

-30-

Spees was not acting within the scope of his employment as he supervised Jackson playing in the pond on the day of the anniversary party. Accordingly, the trial court did not err by granting summary judgment in favor of T.J. Automation on Whalen's claim that the company is vicariously liable for Spees's purported role in causing Jackson's death.

{¶44} Having concluded that the trial court did not err by granting summary judgment in favor of T.J. Automation and the Hammersmiths on Whalen's claims against them, Whalen's first and second assignments of error are overruled.

### Assignment of Error No. III

**The trial court erred as a matter of law, and otherwise committed an abuse of discretion, by entering summary judgment before Plaintiff-Appellant had a full and fair opportunity to complete her discovery [Journal Entries dated March 16, 2018, and August 2, 2018]**

{¶45} In her third assignment of error, Whalen argues that the trial court abused its discretion by denying her the opportunity to conduct additional discovery to respond fully to T.J. Automation's and the Hammersmiths' motions for summary judgment. Specifically, she argues that the trial court abused its discretion by failing to grant her Civ.R. 56(F) motions.

{¶46} Civ.R. 56(F) provides:

Should it appear from the affidavits of a party opposing the motion

for summary judgment that the party cannot for sufficient reasons

-31-

stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.

""""Mere allegations requesting a continuance or deferral of action for the purpose of discovery are not sufficient reasons why a party cannot present affidavits in opposition to the motion for summary judgment.""" *Zimpfer v. Roach*, 3d Dist. Shelby No. 17-17-03, 2017-Ohio-8437, ¶ 41, quoting *Doriott v. MVHE, Inc.*, 2d Dist. Montgomery No. 20040, 2004-Ohio-867, ¶ 40, quoting *Gates Mills Inv. Co. v. Pepper Pike*, 59 Ohio App.2d 155, 169 (8th Dist.1978). "'Civ.R. 56(F) is discretionary, not mandatory.'" *Id.*, quoting *GMAC Mtge., L.L.C. v. Purnell*, 10th Dist. Franklin No. 13AP-551, 2014-Ohio-940, ¶ 12. Thus, "[a]bsent an abuse of discretion, the denial of a Civ.R. 56(F) motion will not be reversed." *Perpetual Fed. Savs. Bank v. TDS2 Property Mgt., L.L.C.*, 10th Dist. Franklin No. 09AP-285, 2009-Ohio-6774, ¶ 11, citing *ABN AMRO Mtge. Group, Inc. v. Roush*, 10th Dist. Franklin No. 04AP-457, 2005-Ohio-1763, ¶ 23. An abuse of discretion suggests that a decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶47} Here, Whalen correctly notes that the trial court "never addressed [her] request for a stay of the summary judgment ruling until discovery could be

completed." (Appellants' Brief at 25). "Nevertheless, when a trial court enters judgment but fails to expressly rule on a pending pretrial discovery motion, it is ordinarily presumed that the court overruled the motion." *Perpetual Fed.* at ¶ 9, citing *State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 469 (1998) and *State ex rel. Cassels*, 69 Ohio St.3d at 223. "Ohio appellate courts regularly presume that a trial court that grants summary judgment without expressly ruling on a pending Civ.R. 56(F) motion has overruled the Civ.R. 56(F) motion." *Id.*, citing *Franco v. Kemppel Homes, Inc.*, 9th Dist. Summit No. 21769, 2004-Ohio-2663, ¶ 17, *Wells Fargo Bank, N.A. v. Shingara*, 11th Dist. Geauga No. 2007-G-2764, 2007-Ohio-6154, ¶ 11, *Sipple v. A.G. Edwards & Sons, Inc.*, 1st Dist. Hamilton No. C-010701, 2002-Ohio-4342, ¶ 6, and *Denham v. New Carlisle*, 138 Ohio App.3d 439, 442 (2d Dist.2000). The trial court's grant of summary judgment to T.J. Automation and to the Hammersmiths is inconsistent with a ruling granting Whalen's Civ.R. 56(F) motions. Therefore, we conclude that the trial court effectively denied Whalen's Civ.R. 56(F) motions.

{¶48} We conclude that the trial court did not abuse its discretion by denying Whalen's Civ.R. 56(F) motions. At this point, we must emphasize that Whalen filed two separate Civ.R. 56(F) motions: one in response to T.J. Automation's motion for summary judgment regarding Whalen's spoliation of evidence claim and another

in response to the Hammersmiths' motion for summary judgment as to all claims brought against them.  (Doc. Nos. 97, 98).

**{¶49}** With respect to Whalen's Civ.R. 56(F) motion filed in response to the Hammersmiths' motion for summary judgment, the trial court did not abuse its discretion by denying her motion because Whalen failed to comply with Civ.R. 56(F).  "'Civ.R. 56(F) requires the [party opposing summary judgment] to submit affidavits with sufficient reasons stating why it cannot present by affidavit facts sufficient to justify its opposition.'"  *Denham* at 443, quoting *Gates Mills*, 59 Ohio App.2d at 169.  "'When a request for a continuance to respond to a motion for summary judgment is not supported by affidavits, a trial court is free to consider the merits of the motion without first ruling on the motion for continuance.'"  *Id.*, quoting *Ramsey v. Edgepark, Inc.*, 66 Ohio App.3d 99, 104 (10th Dist.1990), citing *Grange Mut. Cas. Co. v. State Auto. Mut. Ins. Co.*, 13 Ohio App.3d 217 (1st Dist.1983).  Whalen's Civ.R. 56(F) motion filed in response to the Hammersmiths' motion for summary judgment was not supported by an affidavit stating sufficient reasons why she could not present facts justifying her opposition to their motion for summary judgment.  Although Whalen attached an affidavit executed by her trial counsel to her other Civ.R. 56(F) motion, she did not attach this affidavit to her Civ.R. 56(F) motion filed in response to the Hammersmiths' motion for summary judgment and it was not otherwise incorporated by reference.  Thus, because

Whalen did not comply with Civ.R. 56(F) with respect to her request to continue a ruling on the Hammersmiths' motion for summary judgment pending further discovery, the trial court did not abuse its discretion by granting the Hammersmiths' motion for summary judgment without affording Whalen an opportunity to conduct additional discovery.

{¶50} In addition, although Whalen did comply with Civ.R. 56(F) by attaching an affidavit in support of her request to continue a ruling on T.J. Automation's second motion for summary judgment pending additional discovery, the affidavit fails to set forth sufficient reasons why Whalen could not oppose T.J. Automation's second motion for summary judgment without additional discovery. In the affidavit, Whalen's trial counsel states that additional discovery is needed because T.J. Automation "changed the evidence and advised plaintiffs that the inflatable raft had been located and was now available for inspection." (Doc. No. 97, Plaintiffs' Ex. F). As a result, Whalen's trial counsel contended that discovery would need to be redone because previous discovery "was undertaken by the parties on the basis of inaccurate evidence manufactured solely by * * * T.J. Automation." (*Id.*). However, given that the sole remaining claim then pending against T.J. Automation was for spoliation of evidence arising from the alleged destruction of the raft, Whalen should not have required additional discovery to take a position on T.J. Automation's motion for summary judgment as to the spoliation of evidence

claim. After all, a successful spoliation of evidence claim requires a showing that evidence was willfully destroyed. *Elliott-Thomas v. Smith*, 154 Ohio St.3d 11, 2018-Ohio-1783, ¶ 10, quoting *Smith v. Howard Johnson Co., Inc.*, 67 Ohio St.3d 28, 29 (1993). Discovery of the raft should have allowed Whalen to abandon her claim without additional discovery. Accordingly, the trial court did not abuse its discretion by denying her motion.

{¶51} Whalen's third assignment of error is overruled.

{¶52} Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgments of the trial court.

*Judgments Affirmed*

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**