[Cite as *Kurz v. Great Parks of Hamilton Cty.*, 2016-Ohio-2909.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| LINDA KURZ, | : | APPEAL NO. C-150520 |
| | | TRIAL NO. A-1403674 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| GREAT PARKS OF HAMILTON COUNTY, | : | |
| | : | |
| and | | |
| | : | |
| RAMON CAPETILLO, | | |
| | : | |
| Defendants-Appellants, | | |
| | : | |
| and | | |
| | : | |
| SAFECO INSURANCE CO. OF ILLINOIS, | : | |
| | | |
| and | : | |
| | | |
| UNITED HEALTHCARE INSURANCE CO., | : | |
| | | |
| Defendants. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, Judgment Entered in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  May 11, 2016

*O'Connor, Acciani & Levy LPA* and *Barry D. Levy* for Plaintiff-Appellee,

*Schroeder, Maundrell, Barbiere & Powers*, *Lawrence E. Barbiere* and *Kurt M. Irey* for Defendants-Appellants.

Please note:  this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1}     A woman was hit by a snowplow while walking on a park road.  The question before us is whether the park district and the snowplow operator are entitled to immunity from the pedestrian's personal-injury lawsuit.   The trial court denied summary judgment to both the park district and the driver on the immunity issue.  We conclude that the court got it right as to the park district.  A political subdivision is not entitled to governmental immunity in actions that arise from the negligent operation of a motor vehicle.  Because there exist issues of fact as to whether the driver was operating negligently, summary judgment was properly denied, and the claim against the park district may proceed to trial.  The driver's immunity, however, is a different matter.  Under Ohio's immunity scheme, he only may be liable if he operated the vehicle "with malicious purpose, in bad faith, or in a wanton or reckless manner."  Because the record contains no such facts, we reverse the trial court and enter judgment in favor of the driver.

## I.  Background

{¶2}     On the afternoon of February 5, 2014, 74-year-old Linda Kurz went for a walk in Winton Woods Park.  Winton Woods is part of Great Parks of Hamilton County ("Great Parks"), a political subdivision of the state of Ohio.  There was snow on the ground that day, and two Great Parks employees—Ramon Capetillo and Christopher Fahner—were at work plowing the park roads.

{¶3}     With her dog and her walker, Ms. Kurz was a familiar sight in the park; she walked there on an almost daily basis.  That afternoon, she began her walk on a trail that was next to the roadway.  At some point, she departed from the trail and began to walk on the park road.  Ms. Kurz has only limited recollection of the events leading up to

her accident, so we don't know if it was weather conditions or some other reason that caused her to depart from the walking path.

{¶4} The two snowplow drivers initially were covering separate routes, but at some point in the afternoon, Mr. Capetillo says he spotted Fahner in front of him and sought to catch up with him to discuss which areas remained to be plowed. Mr. Capetillo was operating a Ford F-350 dump truck with a snowplow in front and a salt spreader in the back. By the time the accident occurred, Mr. Capetillo had succeeded in catching up with Fahner and was following not far behind his snowplow.

{¶5} Though it was overcast, Mr. Fahner describes the visibility as otherwise good that day. He was proceeding at about 15-20 m.p.h. and caught sight of Kurz when she was about 200 feet in front of him. Mr. Fahner, by his account, raised his snowplow, shut off his salt spreader, came to an almost complete stop and went around her.

{¶6} Mr. Capetillo saw Fahner move to the center of the road. But, as he tells it, he assumed that Fahner had moved left to put salt on an icy spot. Not wanting to plow over the newly salted area, he took his eyes off the road and looked down at his controls so that he could raise his plow. By the time he looked up and spotted Kurz, it was too late. He swerved and applied his brakes. Despite his efforts, he hit Kurz. She suffered fractures to her left femur, ankle, tibia and spine, as well as a laceration to her skull and a brain hemorrhage.

{¶7} It is not clear whether Kurz was walking with or against traffic at the time of the accident. Both snowplow drivers testified that Kurz was walking on the right side of the road with her back to them. Ms. Kurz, on the other hand, testified that she was walking back to her car which would have placed her on the left side of the road, facing traffic.

{¶8}    Following the accident, Ms. Kurz instituted a personal-injury lawsuit against Great Parks for negligence and against Capetillo for willful, wanton and reckless conduct.  Great Parks and Mr. Capetillo moved for summary judgment, arguing that they were immune from liability.  The court denied the motion for summary judgment.  This appeal followed.

## II. Great Parks and Capetillo Claim Immunity under R.C. Chapter 2744

{¶9}    In their sole assignment of error, Great Parks and Capetillo argue that the court erred when it denied their motion for summary judgment because they were immune from liability under R.C. Chapter 2744, which establishes defenses and immunities for political subdivisions and their employees.  The chapter considers the question of political-subdivision immunity separately from that of its employees, so we consider each party's claim of immunity in turn.

### A.  The Court Properly Denied Summary Judgment as to Great Parks

{¶10}    We employ a three-tiered analysis to assess Great Parks' entitlement to governmental immunity.  The starting point is the general grant of immunity a political subdivision receives for acts done in connection with governmental or proprietary functions.  *See* R.C. 2744.02(A)(2).  Once general immunity is established, it must be determined whether one of five exceptions applies.  *See* R.C. 2744.02(B).  If an exception applies, it must be determined whether immunity can be reinstated under one of the statutory defenses such as those set forth in R.C. 2744.03.

{¶11}    There is no question that Great Parks is entitled to the first-tier general immunity.  Mr. Capetillo was performing a governmental function—park maintenance—when he hit Kurz.  *See* R.C. 2744.01(C)(2)(u)(i).  *See also Wolanin v. Holmes*, 8th Dist. Cuyahoga No. 88454, 2007-Ohio-3410, ¶ 11.

4

{¶12}    The next level of analysis requires us to consider whether one of the five exceptions listed in R.C. 2744.02(B) removes Great Parks' general immunity.  At issue is the first exception:

> [P]olitical subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority.

R.C. 2744.02(B)(1).  If the exception to immunity in R.C. 2744.02(B) applies, there are no defenses available in the third tier of analysis that would restore Great Parks' immunity.

{¶13}    Great Parks contends that the exception does not abrogate its general immunity because Kurz cannot establish that Capetillo was negligent in operating the snowplow.  In arguing that summary judgment should have been granted in its favor, Great Parks focuses solely on the duty element of a negligence claim.

{¶14}    A claim for negligence, of course, requires a duty, breach of that duty and damages.    *See Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984).  It is the duty element that is at issue here.  Great Parks maintains that Capetillo was proceeding lawfully in his right of way at the time the accident occurred.  Under its theory, no duty was owed by Capetillo until he actually saw Kurz in the road in front of him, a point at which it was too late to avoid the accident.  Ms. Kurz, on the other hand, argues that Capetillo owed her a duty when he saw the snowplow in front of him take evasive action and thus became aware of the likelihood of a dangerous condition in the road.

{¶15}    The leading case in Ohio on the duty owed by a driver proceeding lawfully in his right of way is *Deming v. Osinski*, 24 Ohio St.2d 179, 265 N.E.2d 554

(1970). There, the court rejected the legal requirement that a driver must "look, look effectively and continue to remain alert." *Id.* at 181. (Though, it remains good driving advice.) Instead, the court held that a driver proceeding through an intersection in a lawful manner has a right to assume that another driver approaching the intersection from the left will follow the law and yield the right-of-way. *Id.* at 181-182. Upon discovering that another has placed himself in a perilous situation, however, a driver must exercise ordinary care to not injure the other. *Id.* at 182.

{¶16} Ohio courts have applied *Deming* to find that a driver proceeding lawfully in the right of way has no duty to look for pedestrians or vehicles violating the right-of-way. *See Snider v. Nieberding*, 12th Dist. Clermont No. CA2002-12-105, 2003-Ohio-5715, ¶ 9; *Wallace v. Hipp*, 6th Dist. Lucas No. L-11-1052, 2012-Ohio-623. Rather, a driver "must exercise due care to avoid colliding with a pedestrian in his right of way only upon discovering a dangerous or perilous situation." *Hipp* at ¶ 13. Thus a driver owes no duty to a pedestrian who suddenly steps into the driver's path or to a vehicle approaching from another direction that unexpectedly fails to yield the right-of-way. *See Markley v. Knutson*, 3d Dist. Marion No. 9-96-29, 1996 Ohio App. LEXIS 4313 (Sept. 26, 1996) (driver not liable for death of child who walked out in street in front of car); *Leahy v. Richardson*, 5th Dist. Delaware No. 10CAE080065, 2011-Ohio-3214 (motorist with right-of-way had no duty to look for vehicle that suddenly entered his lane).

{¶17} Ms. Kurz disputes that she was violating the right-of-way. Ohio law defines right-of-way as "[t]he right of a vehicle, streetcar, trackless trolley, or pedestrian to proceed uninterruptedly in a lawful manner in the direction in which it or the individual is moving in preference to another vehicle, streetcar, trackless trolley, or

pedestrian approaching from a different direction into its or the individual's path." R.C. 4511.01(UU).

{¶18} In support of her contention, Ms. Kurz points out that she was not crossing the road or darting out into Capetillo's path. She also notes that Ohio law allows a pedestrian to walk on the road where there is no sidewalk. *See* R.C. 4511.50(A). She says further that she was in compliance with the statutory requirement that she walk on the left side of the road as near as practicable to the outside edge of the roadway. *See* R.C. 4511.50(C). But Ms. Kurz confuses the question of whether she could legally walk on a roadway with the question of whether her presence on the road violated Capetillo's right-of-way. R.C. 4511.50 requires that "any pedestrian upon a roadway shall yield the right-of-way to all vehicles * * * upon the roadway." R.C. 4511.50(D). No distinction is made between walking with or against traffic. As a pedestrian on the roadway, Ms. Kurz was required to yield the right-of-way to all vehicles, including Capetillo's snowplow.

{¶19} But even if Kurz was violating the right-of-way, we conclude that Capetillo owed a duty to Kurz once he was placed on notice of a dangerous situation by the evasive maneuver of the snowplow in front of him. While there is no affirmative duty to look for a pedestrian violating the right-of-way, it remains the law in Ohio that a driver aware of a perilous or dangerous condition must exercise due care to avoid injuring another. The corollary of *Deming's* principle that there is no duty to look for danger unless there is a reason to expect it is that where there is a reason to expect danger, one must be on the lookout. Or to put it in traditional tort-law terms, the existence of a duty depends on the foreseeability of injury. *See Snider*, 12th Dist. Clermont No. CA2002-12-105, 2003-Ohio-5715, at ¶ 8. "The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." *Menifee*, 15 Ohio St.3d at

7

77, 472 N.E.2d 707. "In determining whether a reasonably prudent person would have perceived the risks of injury, 'only those circumstances which they perceived, or should have perceived, at the time of their respective actions should be considered.' " *Snider* at ¶ 8, quoting *Menifee* at 77.

{¶20}    Here, a number of circumstances that were perceived by or should have been perceived by Capetillo made an injury foreseeable. The accident took place not on a public highway but on a park road. According to Fahner, he often saw people walking on the park's roads. And this wasn't the typical case of a driver proceeding down a public street. Mr. Capetillo was operating a heavy piece of equipment, on a wintry day, and he chose to operate his snowplow closely behind another snowplow.

{¶21}    But what really makes this case different is that Capetillo saw the lead snowplow take evasive action. If we are to believe Fahner (as we must on a motion for summary judgment), he not only moved into the center of the road to avoid Kurz but brought his vehicle to an almost complete stop. Mr. Capetillo says he interpreted this simply as Fahner moving to salt the center of the road. But it seems to us that as least as likely an explanation was the one that turned out to be correct—that Fahner was swerving to avoid something. Further, Mr. Capetillo's assertion that he lifted his snowplow to avoid scraping the newly salted area is inconsistent with Fahner's testimony that he had shut off his salt spreader. A reasonable person in Capetillo's position, we think, would have taken Fahner's sudden evasive action as a warning sign that there may be a pedestrian or other obstruction in the roadway. In such a situation, a duty arose on the part of Capetillo to exercise due care to avoid a potential collision with Kurz.

{¶22}    Thus we conclude that when Capetillo saw the snowplow in front of him suddenly move to the center of the road and come to an almost complete stop, he was on

sufficient notice of a dangerous condition to be under a duty to a pedestrian in the right-of-way. It is for a jury to decide whether Capetillo breached that duty. *See Scott v. Marshall*, 90 Ohio App. 347, 365, 105 N.E.2d 281 (1951). The trial court properly denied summary judgment as to Great Parks' immunity.

## B. The Trial Court Erred in Denying Summary Judgment as to Capetillo

{¶23} Whether summary judgment was proper as to Capetillo is determined by consideration of R.C. 2744.03(A)(6):

> In addition to any immunity or defense referred to in division (A)(7) of
> this section * * *, the employee is immune from liability unless one of
> the following applies:
>
> (a) The employee's acts or omissions were manifestly outside the
> scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in
> bad faith, or in a wanton or reckless manner;
>
> (c) Civil liability is expressly imposed upon the employee by a section
> of the Revised Code.

{¶24} Ms. Kurz contends that Capetillo is not entitled to immunity because his conduct was reckless. In identifying reckless conduct, the Ohio Supreme Court has explained that "reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, paragraph four of the syllabus. "The actor must be conscious that his conduct will in all probability result in injury." *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-

9

2574, 889 N.E.2d 505, paragraph three of the syllabus. There must be a "perverse disregard of a known risk." *Id.*

{¶25} The consciousness that conduct will likely cause injury is what distinguishes recklessness from negligence. The Ohio Supreme Court has cited with approval the following from the Second Restatement of Torts on the distinction between negligence and recklessness:

Reckless misconduct differs from negligence in several important particulars. It differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency, in that *reckless misconduct requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man.* It differs not only from the above-mentioned form of negligence, but also from that negligence which consists in intentionally doing an act with knowledge that it contains a risk of harm to others, in that the actor to be reckless must recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent. The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind.

(Emphasis added.) *Marchetti v. Kalish*, 53 Ohio St.3d 95, 100, 559 N.E.2d 699 (1990), fn. 3, quoting 1 Restatement of Law 2d, Torts, Section 500, Comment g (1965).

{¶26} The Ohio Supreme Court has said that ordinarily the question of whether conduct was reckless is properly left for a jury. *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994). Nevertheless, the court has not hesitated to find summary judgment appropriate where the facts, when construed in favor of the nonmoving party, fail to rise to the level of reckless conduct. *O'Toole* at ¶ 92. As the court explained, "[a]lthough the determination of recklessness is typically within the province of the jury, the standard for showing recklessness is high, so summary judgment can be appropriate * * * where the individual's conduct does not demonstrate a disposition to perversity." *Id.* at ¶ 75.

{¶27} Here, there are simply no facts in the record that demonstrate a "consciousness" on the part of Capetillo that his conduct would in all likelihood result in injury. *See id.* at ¶ 74. At most, Mr. Capetillo failed to take sufficient precautions once the other snowplow's shifting maneuver made him aware of possible danger ahead. These facts present a jury question as to negligence, but they fail to rise to the level required for recklessness. Because there are no facts indicating that he exhibited a "conscious disregard of or indifference to a known or obvious risk," Mr. Capetillo was entitled to summary judgment on his claim of immunity.

### III. Conclusion

{¶28} The trial court properly denied summary judgment as to Great Parks' immunity. But the court erred when it determined that Capetillo was not immune. The assignment of error is sustained with respect to Capetillo and overruled with respect to

11

Great Parks. We therefore affirm in part, reverse in part, enter judgment in favor of Capetillo and remand for a determination of whether Capetillo's conduct was negligent.

Judgment accordingly.

**CUNNINGHAM, P.J.,** and **MOCK, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.