[Cite as *Miles v. Cummins*, 2021-Ohio-1621.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

BRENT MILES, ET AL.,

                                              CASE NO. 8-20-44

    PLAINTIFFS-APPELLANTS,

    v.

JAYME CUMMINS,                             O P I N I O N

    DEFENDANT-APPELLEE.

---

**Appeal from Logan County Common Pleas Court**
**Trial Court No. CV 20 006 0118**

**Judgment Affirmed**

**Date of Decision:  May 10, 2021**

---

APPEARANCES:

    *Stacey R. Pavlatos* **for Appellants**

    *Belinda S. Barnes* **and** *Robert J. Kidd* **for Appellee**

**WILLAMOWSKI, P.J.**

{¶1} Plaintiff-appellants Brent A. Miles ("Brent") and Chris Miles (collectively "the appellants") appeal the judgment of the Logan County Court of Common Pleas, alleging that the trial court erred in granting summary judgment for defendant-appellee Jayme Cummins ("Jayme"). For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On October 2, 2016, Jayme and her husband hosted a party at their house in Logan County, Ohio. Doc. 1, 13. Brent Deposition, 7. Brent was one of the individuals who was invited to this party. Doc. 12. While at this event, Jayme offered to give Brent a ride on her all-terrain vehicle ("ATV"). Jayme Deposition, 10. Brent then got onto the ATV behind Jayme. Doc. 1, 12. Brent Deposition, 56. Jayme told Brent to hold onto her as she drove. Brent Deposition, 107.

{¶3} Shortly after the ride began, Brent asked her to stop the ATV so that he could get a better grip on the ATV. Brent Deposition, 96, 108. In response, Jayme stopped the ATV, and Brent grabbed onto the ATV's fenders instead of holding onto Jayme. Brent Deposition, 96, 108. He later testified that he "trusted [his] grip there." Brent Deposition, 109. After Brent adjusted his grip, Jayme continued driving the ATV across her lawn. Brent Deposition, 109.

{¶4} As Jayme was driving the ATV, she drove over a "divot" in the ground. Brent Deposition, 53. Brent described what happened next as follows:

> **[W]e were going across the yard and hit some kind of little divot or something and then launched me off the seat. I left—I left—I was still hanging onto the fenders, but I left the seat, and my feet left the machine. And then when I landed back on the machine, I landed onto the seat, and then my foot landed in front of the foot peg or floor and then got trapped under the floor board and the ground.**

Brent Deposition, 53. He then told Jayme to stop the ATV because he believed that he had been injured. Brent Deposition, 66.

{¶5} Jayme then stopped the ATV to check on Brent before she drove him back to the house. Jayme Deposition, 40. Brent Deposition, 66. Brent testified that the entire ride lasted five minutes "at the most * * *." Brent Deposition, 54. Jayme then took Brent to the emergency room where he was treated for a broken ankle and compression fractures in his lower back. Jayme Deposition, 33, 40. Brent Deposition, 31, 72.

{¶6} Subsequently, the appellants filed a complaint that alleged Jayme's negligent operation of the ATV caused Brent's injuries. Doc. 12. Jayme then filed a motion for summary judgment. Doc. 12. Subsequently, the appellants filed a notice of voluntary dismissal without prejudice pursuant to Civ.R. 41(A) on June 4, 2019. Doc. 12. On June 3, 2020, the appellants filed another complaint that initiated the action that is currently before this Court. Doc. 1. This complaint alleged that Jayme's reckless operation of the ATV caused Brent's injuries. Doc. 1.

{¶7} During the course of this litigation, both Brent and Jayme sat for depositions. At Brent's deposition, the following exchange occurred:

[Attorney:]  So when she [Jayme] was operating the four-wheeler, how would you describe how she was driving?

[Brent:]  Like you would a four-wheeler.  *She handled it well.*

[Attorney:]  Had she spun out of control?

[Brent:]  No.  She wasn't out of control.

[Attorney:]  Was she driving it too fast for the conditions of the yard?

[Brent:]  *Didn't seem to be.*

[Attorney:]  What were the conditions of the yard?  Was it wet?

[Brent:]  No, no.  Not that I remember.

* * *

[Attorney:]  Okay.  So what—just to be blunt about it—what, if anything, did my client do wrong when you were riding together?

[Brent:]  Just ran over something that bucked me in the air.

[Attorney:]  Did you notice anything in front of you that you were about to hit?

[Brent:]  No, I didn't see anything.

[Attorney:]  Was there any warning that you were about to be bucked into the air, as you say?

[Brent:]  No.

(Emphasis added.)  Brent Deposition, 56-57.

{¶8} Brent estimated that the ATV was going around thirty-five to forty miles per hour.  Brent Deposition, 96, 111.  He stated that he believed the speed the

ATV was moving played a factor in his injury. Brent Deposition, 115, 118. He

then gave the following testimony:

> **[Attorney:] Did you feel that [Jayme] was operating the vehicle safely for the terrain?**
>
> **[Brent:] Not for the speed of where we were at.**
>
> **[Attorney:] Okay. So it's your testimony that you were going too fast for the terrain?**
>
> **[Brent:] On that area. The flat—there's two parts to that yard. And down at the bottom it was smooth, but when we came up to the top, we hit the rough. It was too fast for that.**
>
> **[Attorney:] Did you ever tell her that she was going too fast when you changed different areas?**
>
> **[Brent:] I didn't feel it until then.**
>
> **\* \* \***
>
> **[Attorney:] Did you ever ask her to slow down when you got into the different terrain?**
>
> **[Brent:] I told her to stop once it happened.**
>
> **[Attorney:] Okay. So you told her to stop after the injury had occurred?**
>
> **[Brent:] Yes.**
>
> **[Attorney:] But before that when you went off the straight-away and onto the different terrain did you ever ask her to slow down?**
>
> **[Brent:] No.**
>
> **[Attorney:] Did you ever tell her that you were scared?**
>
> **[Brent:] No.**

> **[Attorney:] Were you scared?**
>
> **[Brent:] No.**
>
> **[Attorney:] Did you ever feel you were in danger?**
>
> **[Brent:] When you're going—not to that danger, no. I was enjoying the ride.**

Brent Deposition, 119-120. However, he also stated that he did not believe that he had time to ask her to slow down. Brent Deposition, 121.

{¶9} Brent confirmed that he believed, at the time he got onto the ATV, that Jayme "would exercise care to keep [him] safe" as she operated the vehicle. Brent Deposition, 121. He further testified as follows:

> **[Attorney:] Do you think it's possible to ever eliminate the risk of an injury when you're riding on an ATV?**
>
> **[Brent:] No.**

Brent Deposition, 64. Brent also stated that the ATV appeared to have been "designed for two" riders and that "[t]he seat looked big enough for two" passengers. Brent Deposition, 52, 62. However, at this deposition, defense counsel presented Brent with a warning label from the ATV that stated "[n]ever carry passengers." Brent Deposition, 61. Ex. A. Brent testified that he did not see this warning label before he got onto the ATV. Brent Deposition, 64.

{¶10} At her deposition, Jayme testified that she had taken "safe riding courses through the State of Ohio." Jayme Deposition, 35. She also stated that she

did not lose control of the ATV and did not operate the vehicle recklessly. Jayme Deposition, 29, 36, 38. Jayme testified that, before she reached the area where Brent was injured, she "slowed down and hit the brakes * * *" because she "was going to be making a turn so you slow down anyway when you're turning, and there was an unevenness so I didn't want to hit it really fast and hard." Jayme Deposition, 31. During the following exchange, Jayme testified about the speed she was going:

> **[Attorney:] How fast were you going when the incident occurred?**
>
> **[Jayme:] There's no way to tell for sure, but I'm going to say 10, 15 mile an hour tops.**
>
> **[Attorney:] How fast do you have to go to get into second gear?**
>
> **[Jayme:] About 10, 15 mile an hour.**
>
> **[Attorney:] And how long had you been riding before you entered into second gear?**
>
> **[Jayme:] Maybe a 150 yards—200, 200 yards.**

Jayme Deposition, 38-39. She further stated that, during this ride, Brent did not ask her to stop before his injury; did not tell her that she was driving too fast; and did not tell her that he was afraid. Jayme Deposition, 39.

{¶11} On June 23, 2020, Jayme filed a motion for summary judgment. Doc. 12. On July 16, 2020, the appellants filed a memorandum in opposition to Jayme's motion for summary judgment. Doc. 18. On August 5, 2020, the trial court granted Jayme's motion for summary judgment. Doc. 28.

*Assignment of Error*

**{¶12}** The appellants filed their notice of appeal on August 18, 2020. Doc. 33. On appeal, the appellants raise the following assignment of error:

> **The trial court erred in failing to recognize that the plaintiff/appellant bearing on the manner in which defendant/appellee operated her ATV was probative of her reckless misconduct and demonstrated that a genuine issue of material fact existed, thus precluding the granting of summary judgment in favor of the defendant/appellee.**

Appellants argue that they produced evidence that established a genuine issue of material fact as to whether Jayme acted recklessly in operating the ATV.

Legal Standard

**{¶13}** Appellate courts consider a summary judgment order under a de novo standard of review. *James B. Nutter & Co. v. Estate of Neifer*, 3d Dist. Hancock No. 5-16-20, 2016-Ohio-7641, ¶ 5. Under the Ohio Rules of Civil Procedure,

> **[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. * * *. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *.**

Civ.R. 56(C). "The party moving for summary judgment has the initial burden 'to inform the trial court of the basis for the motion, identifying the portions of the

-8-

record, including the pleadings and discovery, which demonstrate the absence of a genuine issue of material fact.'" *Middleton v. Holbrook*, 3d Dist. Marion No. 9-15-47, 2016-Ohio-3387, ¶ 8, quoting *Reinbolt v. Gloor*, 146 Ohio App.3d 661, 664, 767 N.E.2d 1197 (3d Dist. 2001).

{¶14} "The burden then shifts to the party opposing the summary judgment." *Id*. "In order to defeat summary judgment, the nonmoving party may not rely on mere denials but 'must set forth specific facts showing that there is a genuine issue for trial.'" *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10, quoting Civ.R. 56(E). "[B]ecause summary judgment is a procedural device to terminate litigation, it must be awarded with caution." *Williams v. ALPLA, Inc.*, 2017-Ohio-4217, 92 N.E.3d 256 (3d Dist.), quoting *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992). "The court must thus construe all evidence and resolve all doubts in favor of the non-moving party * * *." *Webster v. Shaw*, 2016-Ohio-1484, 63 N.E.3d 677, ¶ 8 (3d Dist.).

{¶15} Under the recreational activity doctrine, "individuals [who] engage in recreational or sports activities * * * assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either 'reckless' or 'intentional' * * *." *Marchetti v. Kalish*, 53 Ohio St.3d 95, 559 N.E.2d 699 (1990), syllabus. In other words, "where injuries stem from 'conduct that is a foreseeable, customary' part of the [recreational] activity,' the defendant 'cannot be held liable for negligence because no duty is owed to

protect the victim from that conduct.'" *Ochall v. McNamer*, 2016-Ohio-8493, 79 N.E.3d 1215, ¶ 41 (10th Dist.), *Gentry v. Craycraft*, 101 Ohio St.3d 141, 2004-Ohio-379, 802 N.E.2d 1116, ¶ 6, quoting *Thompson v. McNeill*, 53 Ohio St.3d 102, 104, 559 N.E.2d 705 (1990), *modified on other grounds by Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266. Thus, "[n]o liability attaches for injuries caused by negligence that occurs during recreational activities." *Taylor v. Mathys*, 3d Dist. Union No. 14-04-32, 2005-Ohio-150, ¶ 10.

{¶16} "Recklessness is a high standard." *Whalen v. T.J. Automation, Inc.*, 2019-Ohio-1279, 134 N.E.3d 869, ¶ 33 (3d Dist.), quoting *Lovegrove v. Stapleton*, 2015-Ohio-1669, 32 N.E.3d 1001, ¶ 34 (2d Dist.).

> **Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct.**

*Anderson* at paragraph four of the syllabus, adopting 2 Restatement of the Law 2d, Torts, Section 500 (1965). *See Marchetti* at fn. 2. Further,

> **'[t]he difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of risk, but this difference of degree is so marked as to amount substantially to a difference in kind.' *Taylor*, 2005-Ohio-150, at ¶ 15, quoting 2 Restatement of the Law 2d, Torts, Section 500, Comment g (1965). 'The actor must be conscious that his conduct will in all probability result in injury.' *Kurz v. Great Parks of Hamilton Cty.*, 1st Dist. Hamilton, 2016-Ohio-2909, 65 N.E.3d 96, ¶ 24, quoting *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, paragraph three of the syllabus. 'The consciousness that conduct will likely**

**cause injury is what distinguishes recklessness from negligence.'** *Id***. at ¶ 25.**

*Whalen* at ¶ 33. In the context of a sporting event or recreational activity,

> **'[w]hat constitutes an unreasonable risk under the circumstances * * * must be delineated with reference to the way the particular game is played, i.e., the rules and customs that shape the participants' ideas of foreseeable conduct in the course of a game.'** *Thompson***, 53 Ohio St.3d at 105, 559 N.E.2d 705. * * * [Further,] 'the nature of the sport involved, the rules and regulations which govern the sport, the customs and practices which are generally accepted and which have evolved with the development of the sport, and the facts and circumstances of the particular case.'** *Id***., quoting** *Hanson v. Kynast* **(1987), 38 Ohio App.3d 58, 64, 526 N.E.2d 327.**

*Taylor, supra*, at ¶ 16. "Although recklessness is generally a jury question, the standard for showing recklessness is high, so summary judgment is appropriate where the record is devoid of evidence showing such conduct." *Hopkins v. Porter*, 3d Dist. Mercer No. 10-13-17, 2014-Ohio-757, ¶ 50.

## Legal Analysis

{¶17} The appellants do not dispute that Brent was engaged in a recreational activity at the time of his injury. Appellants' Brief, 10. *See Brumage v. Green*, 2d Dist. No. 2014-CA-7, 2014-Ohio-2552, ¶ 13 (holding that courts have found "that driving and riding on an ATV is a recreational activity"). Accordingly, in their complaint, the appellants alleged that Jayme operated the ATV "in a reckless manner" and that this "reckless conduct * * * directly and proximately caused"

-11-

Brent's injuries. Doc. 1. However, in her motion for summary judgment, Jayme argued that there was no evidence that she acted recklessly. Doc. 12.

{¶18} In his response to this motion for summary judgment, Brent included affidavits from two witnesses who saw him riding on the ATV with Jayme. Doc. 18, Ex. A, B. Both of these witnesses believed that Jayme was driving faster than ten to fifteen miles per hour, possibly approaching as much as forty miles per hour.[1] Doc. 18, Ex. A, B. Brent asserts that these conflicting estimates of the ATV's speed around the time of his injury create a genuine issue of material fact for trial.

{¶19} But even if Jayme was driving the ATV faster than ten to fifteen miles per hour, Brent has not demonstrated that his injuries were not "a result of a foreseeable and customary part of the activity." *Pope v. Willey*, 12th Dist. Clermont No. CA2004-10-077, 2005-Ohio-4744, ¶ 10. *See Taylor, supra*, at ¶ 21. When asked what Jayme "did * * * wrong," Brent said that she "[j]ust ran over something that bucked me in the air." Brent Deposition, 56-57. Elsewhere Brent testified that this "something" was a "little divot" in the yard. Brent Deposition, 53, 56-57.

{¶20} Brent's testimony indicates that his injuries resulted from bouncing up and down on the ATV seat as Jayme drove across an uneven surface on her lawn. Brent Deposition, 53, 56-57. However, as the name "*all-terrain* vehicle" suggests, ATVs are frequently driven across uneven and unpaved surfaces at a wide range of

---

[1] The ATV Jayme was driving was not outfitted with a speedometer. Jayme Deposition, 46. The ATV can reach a speed of seventy-five miles per hour on flat pavement. Jayme Deposition, 9.

speeds. Brent agreed to ride on an ATV across Jayme's lawn, which was a surface that was clearly unpaved and very likely to be uneven in places. Under the facts of this case, bouncing up and down on an ATV constitutes an "ordinary risk" of this activity. *Marchetti, supra*, at the syllabus. *See Taylor, supra*, at ¶ 10.

{¶21} Further, Ohio courts have held that "[l]osing control and flipping an ATV is a foreseeable and customary risk associated with the activity of driving or riding on an ATV." *Curtis v. Schmid*, 5th Dist. Delaware No. 07 CAE 11 0065, 2008-Ohio-5239, ¶ 57. *See Brumage* at ¶ 14; *McBride v. Butler*, 3d Dist. Crawford No. 3-17-20, 2018-Ohio-1251, ¶ 17-18; *West v. Davendra*, 2012-Ohio-6092, 985 N.E.2d 558 (7th Dist.); *McLoughlin v. Williams*, 12th Dist. Clermont No. CA2015-02-020, 2015-Ohio-3287, ¶ 17. However, in the case before this Court, Jayme was not driving so fast that she lost control of or flipped the ATV when she traveled over the divot in her lawn.

{¶22} Brent testified that Jayme "wasn't out of control" and that she "handled [the ATV] * * * well." Brent Deposition, 56-57. Similarly, Jayme testified that she "didn't lose control" of the ATV. Jayme Deposition, 29. She further testified that the ATV also did not crash, flip, or bottom out. Jayme Deposition, 25, 33, 36. After Brent's injury, Jayme was able to bring the ATV to a stop and then drive Brent back to the house. Brent Deposition, 66. Jayme Deposition, 40. Brent has not produced evidence that indicates his injuries resulted

from conduct that was not a foreseeable or customary risk of the activity of riding an ATV.

{¶23} The evidence in the record also does not indicate that Jayme acted recklessly by "creat[ing] an unreasonable risk of physical harm." *Taylor, supra*, at ¶ 17. Jayme testified that she had owned this ATV since 2005 and had taken "safe riding courses through the State of Ohio." Jayme Deposition, 8, 35. *Schmid, supra*, at ¶ 58. She stated that she had driven this ATV over her lawn on multiple occasions and with passengers. Jayme Deposition, 14-15. She further said that she did not engage in risky maneuvers on the ATV with passengers and did not operate the vehicle in a reckless manner. Jayme Deposition, 38, 42.

{¶24} When asked how Jayme operated the ATV, Brent replied, "Like you would a four-wheeler." Brent Deposition, 56. Again, Brent also testified that Jayme "handled [the ATV] * * * well." Brent Deposition, 56-57. He also stated that he did not feel as though he was in danger during the ride. Brent Deposition, 120. In its judgment entry, the trial court noted that Brent

> **did not produce any evidence that [Jayme] was attempting to drive the ATV 'no hands' or was trying to drive the vehicle on just two of its four wheels * * * or attempting to operate the ATV blind-folded or attempting to drive the ATV through a physical barrier such as a wall at a high rate of speed * * *.**

Doc. 28. Under the circumstances of this case, driving an ATV faster than ten to fifteen miles per hour across a lawn does not, by itself, establish that Jayme acted

-14-

with a "consciousness that [her] conduct [was] likely [to] cause injury * * *" to Brent. *Whalen, supra*, at ¶ 33, quoting *Kurz, supra*, at ¶ 25.

**{¶25}** Having construed the evidence in favor of the appellants, we conclude that no genuine issue of material fact exists for trial. Brent has not produced evidence that Jayme operated the ATV in a reckless manner that caused his injuries. For this reason, the trial court did not err in granting Jayme's motion for summary judgment. As such, Brent's sole assignment of error is overruled.

*Conclusion*

**{¶26}** Having found no error prejudicial to the appellants in the particulars assigned and argued, the judgment of the Logan County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and MILLER, J.J., concur.**

**/hls**